# PACIFIC RAILROAD OF MISSOURI *v.* MISSOURI PACIFIC RAILWAY COMPANY & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Argued April 23d, 24th, 1884.—Decided May 5th, 1884.

*Equity—Fraud—Laches—Pleading.*

In 1876, K brought a suit, in a Circuit Court of the United States in Missouri, to foreclose a mortgage on a railroad, making the railroad corporation (a citizen of Missouri) and others defendants. There was a decree of sale, and a sale, and it was confirmed in October, 1876. In February, 1877, the corporation appealed to this court. The case was affirmed here in April, 1880. In June, 1880, the corporation filed a bill in the same court against another Missouri corporation (a citizen of Missouri) and other citizens of Missouri, alleging fraud in fact in the foreclosure suit, in the conduct of the solicitor and directors of the corporation defendant in that suit, and praying that the decree in the K suit be set aside. On demurrer to the bill, *Held :*

(1.) The record in the K suit, not being made a part of the bill or the record in this suit, could not be referred to :

(2.) The charges of fraud, in the bill, were sufficient to warrant the discovery and relief based on those charges ;

(3.) The case set forth in the bill, being one showing that no real defence was

.. made in the K suit, because of the unfaithful conduct of the solicitor and
directors of the defendant in that suit, was one of which a court of equity
would take cognizance :

(4.) There was no laches in filing the bill, as the time during which the appeal
to this court was pending could not be counted against the plaintiff ;

(5.) As the bill showed hostile control of the corporate affairs of the plaintiff
by its directors during the period covered by the K suit, mere knowledge
by, or notice to, the plaintiff, or its directors, or officers, or stockholders, of
the facts alleged in the bill during that period, was unimportant, a case of
acquiescence, assent, or ratification, or of the intervention of the rights of
innocent purchasers, not being shown by the bill, and the corporation having
acted promptly when freed from the control of such directors ;

(6.) It did not follow that parties who became interested in the plaintiff's cor-
poration, with knowledge of the matters set forth in the bill, were entitled
to the same standing as to relief with those who were interested in the cor-
poration when the transactions complained of occurred ;

(7.) The Circuit Court had jurisdiction of the bill, although the plaintiff and
some of the defendants were citizens of Missouri.

On the 26th of June, 1880, the Pacific Railroad (of Missouri),
a Missouri corporation, filed a bill in equity, in the Circuit Court
of the United States for the Eastern District of Missouri, against
the Missouri Pacific Railway Company, another Missouri cor-
poration, and various individual defendants, citizens of Missouri,
Massachusetts and New York, and a New York corporation.
The main object of the bill was to impeach and vacate, for al-
leged fraud in fact, a decree made by that court, June 6th,
1876, foreclosing a mortgage on railroad property of the plain-
tiff and ordering its sale.    The sale was made September 6th,
1876, it was confirmed by the court October 7th, 1876, and a
deed was given October 24th, 1876, by the master, to the pur-
chaser, who was James Baker.    The decree was made in a suit
brought November 11th, 1875, by one Ketchum, a citizen of
New York, against the present plaintiff, and various citizens of
Missouri and New York, to foreclose a mortgage given by the
present plaintiff, July 10th, 1875, on its railroad and other
property, to Henry F. Vail and James D. Fish, trustees, called
the "third mortgage," to secure a proposed issue of bonds of
$4,000,000.    On the 1st of February, 1877, the present plaintiff
took an appeal to this court from the decree of June 6th, 1876,
and from the order confirming the sale.    The case was re-
turnable at October Term, 1877, was heard here in January,

1880, was decided in April, 1880, the decree below being affirmed, and a rehearing was applied for and was denied May 10th, 1880. See *Pacific Railroad* v. *Ketchum*, 101 U. S. 289. This bill was then promptly filed.

Copies of the bill in the Ketchum suit and of the decree and the deed of the master and the order of the court approving the deed, were annexed to and made a part of the bill in this suit. The material allegations of the latter were these: C. K. Garrison, James Seligman and Pierce (three of the defendants in this suit), were made co-plaintiffs in the Ketchum suit, before the decree was entered, and their solicitors were directed to receive their instructions from and be advised by said Baker, who was the solicitor of this plaintiff, and they did follow Baker's instructions. The decree was procured to be made by the court by false and fraudulent representations made by the defendants herein. The decree and the master's deed designedly and fraudulently embraced more and other property of this plaintiff than was embraced in the mortgage being foreclosed, in the following language, which was interpolated without the knowledge of this plaintiff, viz.: "Including among other things, the track on Poplar street, and the levee in the city of St. Louis, commonly known as the 'Poplar street track'" the value of which property is more than $200,000. All of the defendants in this suit (only three of whom, Baker, Vail and Fish, were defendants in the Ketchum suit, and four others, of whom Ketchum, C. K. Garrison, James Seligman and Pierce, were plaintiffs in the Ketchum suit), had knowledge of and were parties to the frauds herein complained of, either at their inception or by "subsequent subrogation." The Atlantic and Pacific Railroad Company (which will be called the Atlantic Company), was the lessee of this plaintiff's railroad, under a lease, a copy of which was annexed to the bill as an exhibit, and which this plaintiff asked leave to refer to with the same effect as if it were set out at length in the bill, and was in possession of the property of this plaintiff. By the terms of said lease the Atlantic Company assumed certain obligations, including the payment of a rental to this plaintiff, being unable to pay which its managers sought to evade its obligation by destroying this

plaintiff.   On and before June, 1872, the chief officers and directors of the Atlantic Company, who were Andrew Pierce, Jr., Joseph Seligman, A. V. Stout, and others unknown, procured the ownership or control of a majority of this plaintiff's stock, for the avowed purpose of procuring control of all its assets and road ; and, in execution of such purpose, said directors and officers procured the execution of said lease between the two roads, on June 29th, 1872.   Upon the execution of the lease, the Atlantic Company became possessed of all the property and franchises of this plaintiff, and at all times since this plaintiff has not been in control of any of its property, except to receive rents under the lease, from June, 1872, to July, 1875.   Since the making of the lease the stockholders of this plaintiff have been paid all dues under the lease, to July, 1875. All interest on its bonds was also paid, and this plaintiff was not in default on any mortgage liability which existed when the lease was made.   During the lease the Atlantic Company, by false and fraudulent representations that this plaintiff was indebted to it for improvements made on this plaintiff's property, procured the execution by this plaintiff of three issues of bonds, namely, income bonds, for $1,500,000 ; improvement bonds, for $2,000,000 ; third mortgage bonds, so called, for $4,000,000.   The proceeds of all of said issues of bonds went to the Atlantic Company or the persons by whose false and fraudulent action their issue was procured.   At or before November 11th, 1875, when the Ketchum foreclosure suit was begun, the Atlantic Company was indebted to various persons and corporations, whose names were set forth.   C. K. Garrison, on his examination in the Ketchum suit, said that he was one of the complainants in that suit, and the owner of over $1,500,000 of the third mortgage bonds, and represented the owners of the rest.   By the terms of the lease the Atlantic Company undertook to pay all the debts of this plaintiff, as well as all operating and repairing expenses, and all interest on bonds to be issued after the date of the lease, for extending its lines, buying rolling stock, and rentals.   The pretended increase of mortgage debt of $4,000,000, between July 1st, 1871, and July 10th, 1875, was fictitious, fraudulent, without consideration, and con-

trary to the laws of Missouri. The net income of this plaintiff's road from the date of the lease to December 31st, 1874, was $739,172.68. The recitals in the third mortgage bonds that they were issued to procure additional rolling stock for this plaintiff's road, were false. This plaintiff had no legal capacity to execute the third mortgage or to issue $4,000,000 of bonds. The law of Missouri only authorized mortgages of railroad property for certain stated purposes, and no issue of bonds was valid without the vote of the stockholders. The only pretended authority for making the third mortgage (a copy of which was annexed to the bill) was shown by a circular and form of proxy issued to the stockholders by Mr. Hays, President, of which copies were attached to the bill. The circular and proxy did not authorize the mortgage of $4,000,000 or of any amount whatever. The Atlantic Company did not negotiate absolutely any of the $2,000,000 of improvement bonds, but used them to aid its own credit, and several of its directors and officers of this plaintiff were indorsers on obligations of the Atlantic Company secured by said bonds. The third mortgage was procured to be executed fraudulently, to be used as additional security for said indorsements, and $2,500,000 of the third mortgage bonds were used to secure the payment of obligations of the Atlantic Company; and said Garrison and Seligman and the defendant Sage, with full knowledge of these facts, bought at heavy discount the past-due obligations of the Atlantic Company, with the accompanying third mortgage bonds. Some of the directors and former officers of this plaintiff were interested in the bonds or the obligations, and vigorously prosecuted the foreclosure suit, to the destruction of the interests of the stockholders of this plaintiff. The defendants Stout, Fish, D. R. Garrison, Samuels, W. R. Garrison and C. K. Garrison were, during all these transactions, up to the commencement of the foreclosure suit, either directors of the Atlantic Company, or of this plaintiff, or creditors of, or otherwise interested in, the Atlantic Company, and benefited by said frauds, and were fully cognizant of the creation of said fraudulent bonds and of said fraudulent acts, and are not holders in good faith of said third mortgage bonds. The defendant C.

K. Garrison agreed with Andrew Pierce, Jr., Baker and D. R.
Garrison, that, if they, controlling, as they did, the defence to
the Ketchum suit, would consent to a decree therein in the
manner and form in which consent to the entry of said decree
was given, he would pay all their liabilities in connection with
the Atlantic Company. Pursuant to such agreement, said
Garrison did pay said liabilities and took the improvement or
third mortgage bonds which were held as collateral, and there-
upon said Pierce, Baker and D. R. Garrison caused said decree
to be entered, and falsely set forth that this plaintiff consented
to the decree and authorized the action of Baker in the premises.
Prior and subsequent to November 1st, 1875, Baker, one of
the directors of this plaintiff and its general attorney, with
Andrew Pierce, another director, and others unknown, confed-
erated with some of the defendants herein, to institute proceed-
ings to foreclose the third mortgage for the entire $4,000,000,
in order to obtain the entire property for themselves for
greatly less than its real value. In execution of this scheme,
they procured the bill of foreclosure in the Ketchum case to
be printed prior to November 1st, 1875, and filed in the Circuit
Court of the United States for the Eastern District of Missouri,
and procured the complainant, Ketchum, to allow his name to
be used therein, and the bill was sworn to before the coupons
were in default, and, without waiting the six months required
by the trust deed, or procuring the request of the requisite
number of bondholders, they began suit. Baker admitted ser-
vice of subpoena in the name of this plaintiff, without authority,
and without authority filed the answer of this plaintiff, falsely
admitting the due and lawful execution of the mortgage and
the liability of this plaintiff to pay the bonds, well knowing
the said facts invalidating the bonds. As a part of the fraud-
ulent schemes of the defendants, no replications were ever filed
to put the cause at issue; no reference was ever made to a
master, so as to truly inform the cour of the character and
amount of the debt; the cause was hurriedly disposed of, with-
out waiting for the three months allowed by the rules of that
court, in equity; no defence was ever undertaken to be inter-
posed at any stage of the proceedings by Baker, who pretended

to act as solicitor for this plaintiff, but who really acted for Andrew Pierce, W. R. Garrison, C. K. Garrison, Russell Sage, James Seligman, and others unknown, in procuring the decree of foreclosure and the sale thereunder; the trustees, who alone had any right to foreclose the mortgage, never filed any cross-bill or prayed any relief; the recital in the decree, that the cause was heard on "proofs," was wholly false and fraudulent, and there never was any judicial hearing whatever; no proofs were ever taken or offered, but the decree was prepared and entered entirely by consent of, and collusively between, the complainants and the counsel and officers of this plaintiff, who were both carrying out the common purpose of procuring the speediest decree of foreclosure, for which the action was originally instituted, and in fraud of the rights and property of this plaintiff, and without any authority from it; it was false that Garrison, Pierce, and Seligman were the owners of the bonds, as recited in the decree, and the complainants and Baker, counsel for them, and the officers of the corporation, consenting to said decree, knew of all the facts invalidating the bonds, and wrongfully concealed all such facts from the court; no decree was entered decreeing what debt was due under the mortgage, or ordering the payment thereof, or giving any time or opportunity for redemption; the third mortgage bonds, neither by their face nor by any provision of the mortgage, were due at the time the decree was made, and no interest thereon was unpaid, except the coupons which matured on the 1st of November, 1875; well knowing that there was cash in the hands of the receivers appointed by the court in the case, and valuable real estate in the city of St. Louis which could be separately sold, which was far more than sufficient to pay the entire amount of interest justly due on the mortgage debt, even if valid, the complainants and the attorney for this plaintiff, jointly, and for the purpose of defrauding this plaintiff, procured the entry of a decree to sell the entire property of this plaintiff to pay the principal and interest of the bonds; and the whole amount of the third mortgage bonds were not then and have not since been issued, and, in any event, were not, to the full sum of $4,000,000, a

lien upon the premises. Baker, in pursuance of said fraudulent understanding, purchased the property at the sale, not for this plaintiff, his clients, and received a pecuniary reward from the defendant the Missouri Pacific Railway, for doing the same. He bought the property upon secret agreements, and in trust for C. K. Garrison and his associates, for $3,000,000, payable in third mortgage bonds, a sum greatly less than its actual cash value. C. K. Garrison was surety for Baker, as purchaser. Baker transferred his interest in the purchase to the defendant the Missouri Pacific Railway Company, which had since held it. It had issued to the holders of the third mortgage bonds of this plaintiff, bonds of itself for an equal amount, the third mortgage bondholders receiving accrued interest in cash, and purchasing an equal amount of the stock of the Missouri Pacific Company. The principal holders of the third mortgage bonds were and had been C. K. Garrison, Sage, James Seligman and others, who confederated to procure the decree. On November 1st, 1876, the Missouri Pacific Company made a mortgage for $4,500,000, to secure a pretended and fraudulent indebtedness, in which mortgage the defendant the Central Trust Company is now mortgagee. The defendants the Missouri Pacific Company, C. K. Garrison, Sage, and James Seligman, owned and controlled, or the same were held for their use, nearly the whole amount of the third mortgage bonds, and all took them with full knowledge of the want of authority to issue them and of their fraudulent character. As part of said fraudulent scheme, the Atlantic Company, in 1872, procured the passage of an act of the legislature, to enable the directors of this plaintiff to retain control of the company against the will of the stockholders. From the passage of said act to December, 1876, the Atlantic Company, through the directors of this plaintiff, who were false to their trust, had, by means of said law, controlled the organization and management of this plaintiff's corporation. The directors of this plaintiff did not properly represent the interests of its stockholders, but used their position to strip it of its property. The stockholders of this plaintiff, in writing, requested said directors to resign, that others might be appointed in their place, who would properly attend to the duties of their

office, and requested them to employ other counsel than Baker to defend the Ketchum suit, but said directors allowed Baker, who had caused the Ketchum complaint to be prepared before any cause of action arose, and had caused the subpœna to be served on himself, to put in the answer of this plaintiff in said suit, when said directors and Baker knew that the averments admitted were many of them false in fact. The defendants C. K. Garrison, W. R. Garrison, Oliver Garrison, D. R. Garrison, Jay Gould, Russell Sage, A. V. Stout, George J. Forrest, Webb M. Samuels and Joseph L. Stephens, with others unknown, were then, or had been, directors of the defendant the Missouri Pacific Railway Company, and in the receipt of its income, and had knowledge of all the matters complained of, and were parties to said frauds, and had been, from October, 1876, to the present time, in possession of this plaintiff's property.

Answers on oath to interrogatories in the bill were required from all the defendants except Baker (Stout not being made a defendant in the prayer for process).

The prayer of the bill was, that the improvement bonds, and the third mortgage bonds, and the two mortgages securing them, and the mortgage to the Central Trust Company be declared void; that the decree of foreclosure in the Ketchum suit be set aside; and that proper accounts be taken, and this plaintiff be allowed to redeem, and its property be restored to it.

The decree in the Ketchum suit stated that this plaintiff, as defendant, appeared by James Baker, as its solicitor, and that he appeared as defendant, in his own proper person, and as solicitor for five other defendants, who were not defendants in the present suit. It also stated that the " court, being fully advised in the premises, and by the consent of the parties to this suit, through their solicitors of record, thereupon and in consideration thereof " decreed, but the terms of the consent are not otherwise set forth in the decree.

There were two demurrers to the bill—one by the Missouri Pacific Railway Company, O. Garrison, D. R. Garrison, Samuels and Baker; the other by Ketchum, C. K. Garrison,

Pierce and Stephens. The two demurrers were substantially identical, except that, in the first one, O. Garrison, D. R. Garrison, and Samuels alleged that they were not proper or necessary parties, and in the second one it was alleged that the Circuit Court had no jurisdiction over the suit. In other respects, each demurrer was as follows:

"The defendants, . . . . by protestation, not confessing all or any of the matters or things in the said complainant's bill contained to be true in such manner and form as the same are therein set forth and alleged, do demur to the said bill, and for cause of demurrer show, that the said complainant has not, by its said bill, made such a case as entitles it, in a court of equity, to any discovery from these defendants respectively, or any of them, or any relief against them, as to the matters contained in said bill, or any such matters; and that any discovery which can be made by these defendants, or any of them, touching the matters complained of in the said bill, or any of them, cannot be of avail to the said complainant for any of the purposes for which a discovery is sought against these defendants by the said bill, nor entitle the said complainant to any relief in this court touching any of the matters therein complained of. And for further and more specific grounds of demurrer these defendants aver as follows, to wit: (1.) If, or in so far as, the said bill of complaint is to be treated and regarded as a bill of review for errors apparent in the record, then it clearly appears that the time limited by law for the bringing of such a bill of review had elapsed long prior to the bringing of the present suit; and also that said decree has been affirmed, on appeal, by the Supreme Court of the United States. If, or in so far as, the said bill of complaint is to be regarded and treated as a bill of review instituted upon the discovery of new matter, or based upon errors not apparent of record, then it appears that no leave of this court has been obtained for the filing of such a bill of review. It does not appear in the bill of complaint, or otherwise, that the matters of complaint therein set forth were not known to the complainant at the time of the pendency of the foreclosure, or that they could not have been therein set forth or determined; and the bill of complaint discloses such negligence and laches in the institution of the suit as destroys complainant's right to the relief prayed for. (2.) The bill of complaint contains

no description of the property mortgaged or covered by the decree, and in reference to which relief is sought to be had. (3). The bill of complaint fails to set forth the bill of complaint or the decree in the proceeding sought to be assailed, or the tenor or purport thereof, all of which things should appear in the body of the bill of complaint, in order to entitle the complainant to any relief or discovery. (4.) The averments of the bill of complaint show that the complainant, even if its bill is to be treated as an original one and not a bill of review, should be precluded by its own laches and neglect from now instituting the present proceeding; for, it is nowhere averred that the complainant or its stockholders were at any time ignorant of the various alleged frauds complained of ; and, on the other hand, it does appear that the complainant and its stockholders were all along aware of all the facts now sought to be assigned as grounds for relief and discovery in the bill, and that the complainant could have instituted its suit under the authority of the officers now representing it, as early as March, 1877, and that the stockholders of complainant had the means and remedies to have averted the alleged wrongs, as well as the rendering of the decree and the foreclosure of the property now complained of, in so far as they may have had any just defences thereto. (5.) It affirmatively appears, by said bill of complaint, in conjunction with the exhibits sought to be made a part thereof, that the said stockholders of the complainant, having full knowledge of all the matters now sought to be set up as grounds of relief and discovery in this case, were allowed full opportunity to interpose any and all objections they might have to the rendering of said decree, and not only failed to do so, but actually assented to said decree in manner and form as it was rendered, and that the said stockholders actually assented to and ratified the sale of the property which was made under and by virtue of the foreclosure proceedings. (6.) The bill of complaint fails to aver that its stockholders were at the time ignorant of the various facts alleged as occurring and existing prior to the foreclosure suit, or during the pendency of said suit, or that they were in any way precluded from making any defences that they might have to said decree or foreclosure, all which averments, under the facts and circumstances of this case, should be made to appear by the bill of complaint, in order to entitle it to any relief or discovery. (7.) The said bill of complaint is altogether vague, uncertain,

and inconsistent in its various averments, and abounds in prolix, redundant, and impertinent matters, and it is not such a bill as, under the course of proceedings in chancery and of this court, these defendants ought to be called upon to make plea or answer to. (8.) There is a defect of material and necessary parties defendant in said suit ; for it appears, from said bill of complaint, that, in order to the obtaining of the relief sought for, J. B. Colgate & Co., D. L. Caldwell, the National Bank of Commerce of New York, the National Shoe and Leather Bank, Andrew Pierce, as well as other corporations and individuals, and especially the officers of the Atlantic and Pacific Railroad Company at . the time of the perpetration of the alleged frauds, and the former. officers of the Pacific Railroad, are necessary and proper parties to the suit, in order to the obtaining of the relief sought to be had in the bill of complaint. (9.) The thirty-fourth, thirty-seventh, thirty-eighth, thirty-ninth, fortieth, forty-first, and forty-. second clauses of the bill of complaint contain matters and allegations that are entirely immaterial and irrelevant, and all of which have been adjudicated against the complainant, on appeal, by the Supreme Court of the United States."

The demurrers were brought to a hearing, and were, by consent, ordered to stand as demurrers for the Central Trust Company, and were sustained. 2 McCrary, 229. The plaintiff elected to abide by the bill, and it was dismissed, and the plaintiff has appealed.

*Mr. N. H. Cowdrey* and *Mr. D. H. Chamberlain* for appellant.

*Mr. Melville C. Day* and *Mr. Wager Swayne* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court. He stated the facts in the foregoing language, and continued :

The Circuit Court, in its opinion, regarded the bill as an original bill to impeach the prior decree for fraud, and not as a bill of review upon newly discovered facts and evidence. It held the bill to be insufficient, for want of an affirmative allegation that the plaintiff was ignorant, during the pendency of the original suit, of the facts set up in the bill, much less that it was unable, after due diligence, to ascertain and plead

them. The court added : "But the demurrer goes further, and raises the question whether the bill and exhibits do not show affirmatively, that the present complainant, through its stockholders, had notice of the foreclosure suit, knowledge of the defence now insisted upon against the third mortgage bonds, and ample opportunity to make that defence. It is, we think, very clear, that, in considering the question of notice, no distinction can be made between the corporation and its officers and stockholders. We cannot separate them and say the officers and stockholders knew of the fraud, but the corporation did not. If, therefore, the stockholders were advised of the foreclosure suit, and of the facts now charged as constituting fraud in the execution of the bonds and mortgages sued on therein, and had an opportunity to intervene and defend, and did not do so, the corporation is concluded by their laches. That the stockholders, as a body, were advised of the foreclosure suit, and took action looking to its defence, and that they did not rely upon the officers of the corporation, but distrusted and antagonized them, is clear from the allegations of the forty-fifth count of the bill, by which it is charged that the stockholders, in writing, requested the directors to resign, that others might be appointed in their place, who would properly attend to the duties of their office; also, that the stockholders requested said directors to employ counsel other than James Baker to defend the suit of Ketchum."

The court, in its opinion, then makes reference to various matters which, it states, appear in the record of the Ketchum case—that, at a meeting of stockholders held in March, 1876, at St. Louis, several months before the decree of foreclosure was made, a resolution was adopted requesting the directors to employ counsel to aid in the defence of the foreclosure suit ; that the stockholders, or their managing committee, afterwards assented to the decree; and that the stockholders knew the facts now set up by way of defence.

The record in the Ketchum suit is not before us, on this appeal. The only allegation in the bill in regard to it is this : "Your orator prays liberty to refer to the files and records of said United States Circuit Court, in the case of *George E.*

*Ketchum* v. *Pacific Railroad et al.*, to show the collusive, irregular and fraudulent character of the legal proceedings instituted, with advice of said Baker, the counsel of your orator, to sell all its property for the enforcement of a security which your orator avers to be fraudulent and void, and for which your orator had received no valuable consideration." There is not, in the record on this appeal, any stipulation that the Ketchum record be considered as a part of the bill, nor is it identified in any way. It is no part of the transcript certified from the Circuit Court. The clerk of that court certifies that what is before us is "a true transcript of the record in case No. 1,677, of Pacific Railroad (of Missouri), plaintiff, against Missouri Pacific Railway *et al.*, defendants, as fully as the same remain on file and of record in said case in my office." It follows, that the record in the Ketchum case was never made part of the record in this case, so far as appears from the only record which is before this court, on this appeal. In regard to the bill in the Ketchum suit, and the decree, and the master's deed, and the order approving the deed, they are made a part of the bill in this suit, and identified by the annexing of copies. But the statement in the bill that the plaintiff prays liberty to refer to the files and records of the Circuit Court in the Ketchum suit, to show such and such things, can be of no force or effect to allow either party to claim, in this court, the right to produce or refer to anything, as answering the description of such files and records, which it may assert to be such, or as being what the Circuit Court considered as before it. One of the assignments of error, on this appeal, is that the Circuit Court considered matters outside of the record, and matters not embraced in the bill. We are of opinion that this court cannot consider anything which is not contained in the bill and the exhibits which are annexed to it, and that it cannot look into anything otherwise presented as the files and records of the Ketchum suit, or of any other proceedings in any court, for the purpose of determining the questions arising on the demurrers to this bill.

The decision of the Circuit Court was placed upon the ground that the stockholders, being dissatisfied with the action of the

directors and the attorney of the company in defending the foreclosure suit, were put on inquiry, and bound to do whatever it was in their power to do to protect their interests; that any individual stockholder was at liberty to apply to the court for leave to intervene and defend; that the stockholders were parties in interest, and, upon representing that fact to the court, and showing that the officers were not defending in good faith, they would, without doubt, have been allowed to defend; and that stockholders of a corporation, though not bound to intervene in a suit against the corporation, for the protection of their rights, cannot, after having notice that the officers are not faithfully defending a suit, neglect to intervene, or to take any steps in the way of endeavoring to do so, and permit a final decree to be entered, and a sale to take place, and then, after years have elapsed, be permitted to attack the validity of the proceedings.

The case, therefore, was made to turn on the question of laches. The decree was made June 6th, 1876, the sale September 6th, 1876, the report of sale September 15th, 1876, the confirmation of the sale October 7th, 1876, and the master's deed October 24th, 1876. The present plaintiff took an appeal to this court from the decree, and from the order confirming the sale, February 1st, 1877. It prosecuted that appeal in due form, and the case was heard here as soon as the court could hear it, as the bill states. It appears from the report of the case in 101 U. S. 289, that the present plaintiff contended here, that it had not consented to the decree, and sought to examine the question of the alleged fraud or unauthorized conduct of its solicitor and its officers, and also sought to defeat the jurisdiction of the Circuit Court, and to attack the propriety of the purchase by the solicitor. The conclusion of this court was, that it could not discover any error that could be corrected by appeal. But, in its opinion, it said: "The remedy for the fraud or unauthorized conduct of a solicitor, or of the officers of the corporation, in such a matter, is by an appropriate proceeding in the court where the consent was received and acted on, and in which proof may be taken and the facts ascertained." Thereupon, this bill was immediately filed.

The demurrers in this case are to the whole bill. If any part of the bill is good the demurrers fail. The charges of fraud in the bill, which are admitted by the demurrers for present purposes, are sufficient to warrant the discovery and relief based on such charges, leaving for consideration only the questions of laches and of jurisdiction.

On the admitted allegations of the bill, there was no real defence made in the Ketchum suit, and the present plaintiff was prevented from making that defence, by the unfaithful conduct of its solicitor and its directors, and the directors of the Atlantic Company. A case of that kind is one of which a court of equity will take cognizance. *United States* v. *Throckmorton*, 98 U. S. 61.

As to the question of laches, the pendency of the appeal taken in the Ketchum suit suspended the control of the Circuit Court, and of every other court, except this court, over that decree, in respect to the relief sought in this suit, of setting that decree aside and declaring it fraudulent and void, all the other relief asked being consequent on that. The appeal appearing to have been taken and prosecuted in good faith, in view of what appears in the bill herein, and in the report of the case in this court, we cannot hold, on this demurrer, that the time during which that appeal was pending can be counted against the plaintiff on the question of laches. *Ensminger* v. *Powers*, 108 U. S. 292.

As to the frauds alleged in the bill respecting the matters in the conduct of the suit, resulting in the decree, the right to relief is based on the view, that the corporation itself, the present plaintiff, speaking and acting now for its stockholders as a body, was powerless then because it was misrepresented by unfaithful directors, who did what was done and refused to do otherwise, and through whom alone it could then speak and act. The allegations in the bill, of facts showing the existence of hostile control of the corporate affairs of the plaintiff by its directors, from before the bringing of the Ketchum suit till after the foreclosure sale, are entirely adequate as against a demurrer. Under such circumstances, mere knowledge by, or notice to, the plaintiff, or its directors or officers, or more or

less of its stockholders, is unimportant; and the plaintiff cannot be concluded by the failure of any number of its stockholders to do what unfaithful directors ought to have done, unless a case is shown of such acquiescence, assent or ratification as would make it inequitable to permit what has been done to be set aside, or unless the rights of innocent purchasers have subsequently intervened, to an extent creating an equitable bar to the granting of relief. The bill in this case does not show such a state of things. While stockholders, more or less in number, may be allowed to interpose, if they have the means or the inclination to take upon themselves the burden of such gigantic controversies as are involved in the railroad transactions of the present day, it would go far to legalize condonation of such transactions as are set forth in this bill, if mere knowledge by helpless stockholders of the fraudulent acts of their directors were to prevent the corporation itself from seeking redress, if it acts promptly when freed from the control of such directors. Fruitlessly requesting unfaithful directors to resign and to employ other counsel, so far from throwing on the stockholders the peril of losing their rights, represented by the company, if they do not personally assert them in place of the directors, operates of itself, without more, only to aggravate the wrong. At the same time, it by no means follows that parties who have become interested in the plaintiff's corporation with knowledge of the matters set forth in the bill, are entitled to the same standing, as to relief, with those who were interested in the corporation when the transactions complained of occurred.

As to the matters alleged which are extrinsic or collateral to the issues in the Ketchum suit, to what extent, greater or less, there is jurisdiction to examine them under this bill, is a question not to be decided on these demurrers to the whole bill. The bill is sufficient in regard to the other frauds alleged. But, in regard to one of those extrinsic matters, the bill states that specific property not covered by the mortgage was put into the decree without the knowledge of this plaintiff.

Upon the question of jurisdiction, there can be no doubt that the Circuit Court, as the court which made the Ketchum decree,

and had jurisdiction of the Ketchum suit, as this court, in *Pacific Railroad* v. *Ketchum*, 101 U. S. 289, held it had, has jurisdiction to entertain the present suit to set aside that decree on the grounds alleged in the bill, if they shall be established as facts, and if there shall be no valid defence to the suit, although the plaintiff and some of the defendants are citizens of Missouri. The bill falls within recognized cases which have been adjudged by this court, and have been recently reviewed and reaffirmed in *Krippendorf* v. *Hyde*, 110 U. S. 276. On the question of jurisdiction the suit may be regarded as ancillary to the Ketchum suit, so that the relief asked may be granted by the court which made the decree in that suit, without regard to the citizenship of the present parties, though partaking so far of the nature of an original suit as to be subject to the rules in regard to the service of process which are laid down by Mr. Justice Miller in *Pacific Railroad* v. *Missouri Pacific Railway Co.*, 1 McCrary, 647. The bill, though an original bill in the chancery sense of the word, is a continuation of the former suit, on the question of the jurisdiction of the Circuit Court. *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, 633.

We do not see any force in the second and third grounds of demurrer, nor, at present, in the eighth. The seventh ground of demurrer alleges what is, if true, matter for exception, and so does the ninth, in part. As to the rest of the ninth, it is matter for an answer. All the demurring parties seem to be proper parties.

If, as has been strenuously argued for the defendants, there are complete defences, on the merits, to the bill, answers should have been put in and proofs taken. We can act only on what the bill brings before us, and all it alleges is admitted, for present purposes. The future proceedings in the case may show that the allegations of the bill are untrue, or may disclose perfect defences to the suit. But, as the suit now stands, the plaintiff is entitled to have the matters it alleges inquired into and adjudicated.

*The decree of the Circuit Court is reversed, and the case is remanded to that court with direction to overrule the demurrers with costs, and to take such further proceedings in the suit as shall be proper and not inconsistent with the opinion of this court.*