### UNITED STATES v. RADIO CORPORATION OF AMERICA et al.
### No. 793.

District Court, D. Delaware.
April 3, 1933.

Nathan Burkan, of New York City, and George N. Davis, of Wilmington, Del., for Torquay Corporation.

Leonard E. Wales, U. S. Dist. Atty., of Wilmington, Del., and John Lord O'Brian and Russell Hardy, Sp. Assts. to Atty. Gen., for the United States.

William G. Mahaffy and Charles F. Curley, both of Wilmington, Del., and Charles Neave and Stephen H. Philbin (of Fish, Richardson & Neave), both of New York City, for Radio Corporation of America.

Charles F. Curley and William G. Mahaffy, both of Wilmington, Del., and Thurlow M. Gordon (of Cotton, Franklin, Wright & Gordon) and Joseph M. Hartfield (of White & Case), both of New York City, for General Electric Co.

Charles F. Curley and William G. Mahaffy, both of Wilmington, Del., and William D. Whitney and Robert Swaine (of Cravath, deGersdorff, Swaine & Wood), both of New York City, for Westinghouse Electric & Mfg. Co.

NIELDS, District Judge.

Torquay Corporation, holder of 100 shares of common and 100 shares of preferred stock of Radio Corporation of America, asks leave to intervene. This suit was brought by the United States against Radio Corporation of America, General Electric Company, Westinghouse Electric & Manufacturing Company, a number of subsidiaries of those three companies, and certain other defendants. The United States alleged that various contracts and agreements and the transfer of a large block of stock of Radio Corporation of America to General Electric and Westinghouse Companies for which Radio received certain exclusive patent rights and plants and equipment from General Electric and Westinghouse Companies constituted violations of the Sherman and Clayton Acts (15 USCA §§ 1–7, 15 note, and 38 Stat. 730).

November 21, 1932, a consent decree in the government suit was entered upon stipulation of the parties. The decree provided: "General Electric Company shall within three months from the date hereof divest itself of substantially one-half of all of the holdings of itself and its subsidiaries of the shares of common stock of Radio Corporation of America by distributing such shares ratably to its own common stockholders, or causing them to be so distributed." A like provision applied to the Westinghouse Company.

Shortly after the entry of this consent decree, Torquay Corporation commenced an action in the Supreme Court of New York County against Radio Corporation of America, General Electric Company, and Westinghouse Electric & Manufacturing Company, and the respective directors of those corporations, seeking an injunction restraining the distribution of the stock of Radio Corporation under the consent decree, and for other relief. The suit was removed to the federal court. December 14, 1932, in disposing of a motion to dismiss (D. C.) 2 F. Supp. 841, Judge Knox said: "Assuming for the moment that this court has jurisdiction of the present suit, it is clear, as a matter of comity and of the orderly administration of justice, that this court should refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal court. Especially is this so where it is clear that the United States District Court in Delaware would have jurisdiction of such a suit as is now before this court. A bill to modify or restrain the enforcement of a decree of a federal court may undoubtedly be brought in the court which entered such decree. Pacific Railroad of Missouri v. Missouri-Pacific Railway, 111 U. S. 505, 4 S. Ct. 583, 28 L. Ed. 498. See Johnson v. Christian, 125 U. S. 642, 8 S. Ct. 989, 1135, 31 L. Ed. 820; Sherman National Bank v. Shubert Theatrical Company (C. C. A.) 247 F. 256. See, also, Foster Federal Practice (6th Edition) §§ 51, 132."

January 10, 1933, Torquay Corporation filed its petition in this court for leave to intervene in this cause. It contains many allegations of violations of the anti-trust laws as alleged in the petition of the United States. Petitioner claims no relief based thereon. The petition further alleges that as a result of the consent decree Radio has lost valuable rights which had theretofore been transferred to it by General Electric and Westinghouse and "for which Radio has not received full, fair and adequate consideration, and General Electric and Westinghouse have been and are unjustly enriched by their present ownership of said stock at the expense of Radio," and that General Electric, Westinghouse, and Radio "deceived and defrauded" this court in failing to present to the court "all of the facts and circumstances with relation to the acquisition by General Electric and Westinghouse of Radio stock" with con-

sequent injury to the Radio Corporation. Finally, the petition alleges that General Electric and Westinghouse "do not intend to wait the required three-month period given to them by the decree to dispose of one-half of their holdings in the common stock of Radio, but, on the contrary, they have announced, and now threaten to immediately dispose of all of their holdings of Radio stock by distributing the same to the respective stockholders of General Electric and Westinghouse, thereby giving to such stockholders 7,500,000 shares of Radio stock, without consideration, as a bonus or special or stock dividend, all at the expense of Radio and its stockholders, including this petitioner and other stockholders of Radio, similarly situated, and to the unjust enrichment of General Electric and Westinghouse and their respective stockholders."

Upon the filing of the petition an order was entered requiring the parties to this suit (except defendants not included in the consent decree) to show cause why the following order should not be made:

"(a) Permitting the petitioner, Torquay Corporation, as a stockholder of Radio Corporation of America, to intervene in this cause on behalf of itself and other stockholders of Radio Corporation of America, similarly situated; and

"(b) Modifying the consent decree herein filed on or about November 21, 1932, and permitting inquiry to be made regarding the adequacy and fairness of the consideration alleged to have been given to Radio Corporation of America by General Electric Company and Westinghouse Electric & Manufacturing Company for 7,500,000 shares of stock of said Radio Corporation of America."

By supplemental petition Torquay Corporation asks for an order modifying the consent decree of November 21, 1932, to permit it to secure similar relief in other courts.

The order to show cause provided that "until the hearing and final determination of the petition" the General Electric and Westinghouse Companies "be and they hereby are enjoined and restrained from making any distribution of the capital stock of said Radio Corporation of America under the consent decree heretofore entered in this cause."

Three different questions were presented: (1) Whether Torquay Corporation may intervene in this suit; (2) whether the consent decree should be modified so as to permit petitioner and other stockholders and creditors of Radio Corporation to bring proceedings for its further modification in other courts; and (3) whether the injunctive relief in the order to show cause should be continued or dissolved.

The third question has been disposed of. The paragraph of the order to show cause relating to the distribution of the stock has been vacated.

■ May Torquay Corporation intervene in this suit? Petitioner states in its brief: "There is no attempt here to modify this [consent] decree nor to vary its terms, nor to interfere with the injunctive restraint in so far as it affects monopoly." On what theory can leave to intervene be sustained? Petitioner apparently challenges all the transactions that took place between Radio, General Electric, and Westinghouse, commencing with the agreement of January 1, 1930, under which certain property and exclusive patent rights passed from General Electric and Westinghouse to Radio, and for which Radio issued to General Electric and Westinghouse shares of its stock. The basis of this attack seems to be the question whether Radio received fair and adequate consideration from General Electric and Westinghouse for such shares of stock of Radio, and whether dominance and control was exercised by General Electric and Westinghouse over Radio in this transaction. These inquiries have no relation to the relief sought in the government suit. As stated in Equity Rule 37 (28 USCA § 723), intervention shall be "in subordination to, and in recognition of, the propriety of the main proceeding." To allow the intervention here sought and embark upon a determination of the questions raised by petitioner would be to import into this case new issues. This cannot be done. United States v. Northern Securities Co. (C. C.) 128 F. 808. The United States and the public can have no interest in any controversy of Radio Corporation, its stockholders and creditors, against the General Electric and Westinghouse companies. The consent decree terminated what promised to be protracted and burdensome litigation. It was entered in the public interest and met the policy of the statutes. Petitioner has failed to present facts justifying the court in taking any action to impair the integrity of the consent decree. The charge that this court in entering that decree was deceived and defrauded is not worthy of any consideration. There is not the slightest evidence that any party to the stipulation on which the decree was entered acted otherwise than in the utmost good faith. Leave to intervene should not be granted.

■ However, the petitioner and other stockholders of Radio Corporation should not be deprived of their "day in court." The petitioner or any stockholder of Radio Corporation believing himself aggrieved by the action of General Electric or Westinghouse under or pursuant to the provisions of the consent decree may file a bill in this court seeking appropriate relief.

The petition and supplemental petition for leave to intervene must be dismissed.

Application to intervene has been determined upon a consideration of the petition and supplemental petition alone. It is unnecessary to pass upon the propriety of filing affidavits on such an application. However, the affidavits submitted will be marked filed.