775 F.2d 70
 227 U.S.P.Q. 716, 1985-2 Trade Cases 66,829,
1985 Copr.L.Dec. P 25,849
 BANDAI AMERICA INCORPORATED, a New Jersey Corporation and
Bandai Company, Ltd., a Japanese Corporation, and Bandai
Overseas Corporation, a Japanese Corporation now merged into
Bandai Company, Ltd., Involuntary Plaintiffs,
v.
BALLY MIDWAY MFG. CO., an Illinois Corporation, Namco, Ltd.,
a Japanese Corporation, Namco America, Inc., a
California Corporation.
Appeal of BANDAI AMERICA INCORPORATED and Bandai Company, Ltd.
 Nos. 84-5884, 85-5355.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 13, 1985.
Decided Oct. 10, 1985.
 
 Evans, Koelzer, Osborne & Kreizman, Red Bank, N.J. (George J. Koelzer (argued), Red Bank, N.J., of counsel, and Joel N. Kreizman, Red Bank, N.J., on brief), for appellants.
 Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, Joseph J. Fleischman, William W. Robertson, Roseland, N.J., Thoits, Lehman & Love, William J. McLean, Scott A. Ross (argued), Palo Alto, Cal., Scott A. Ross, Palo Alto, Cal., on brief, for appellees Namco Ltd. and Namco America, Inc.
 Loeb & Loeb, David A. Gerber (argued), Robert A. Meyer, James B. Hicks, Los Angeles, Cal., Pitney, Hardin, Kipp & Szuch, Frederick L. Whitmer, Gregory C. Parliman, Morristown, N.J., Jenner & Block, Keith F. Bode, Chicago, Ill., for appellee Bally Midway Mfg. Co.
 Frederic W. Yerman (argued), Kaye, Scholer, Fierman, Hays & Handler, New York City, for Coleco Industries, Inc. in No. 85-5355; Phillip A. Geraci, on brief.
 Before ADAMS, GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Bandai America Incorporated and others (Bandai) appeal from a summary judgment in favor of Bally Midway Mfg. Co. (Bally), Namco Ltd. and Namco America, Inc. (Namco), and Coleco Industries, Inc. (Coleco) in Bandai's action for relief from a 1982 settlement and judgment and for relief under the Copyright Act, the Sherman Antitrust Act and other statutes.[1] Bandai also appeals from an order that attorneys fees will be awarded against it. We affirm the summary judgment on liability but dismiss the appeal from the order that attorneys fees will be awarded.
 
 I.
 
 2
 On November 20, 1981, Midway and Coleco brought suit in the United States District Court for the Central District of California against Bandai, contending that Bandai's sale of two video games infringed Midway's copyrights and trademarks covering "the Pac-Man" and "Galaxian" video games, of which Coleco was a licensee. On July 22, 1982 that action was transferred to the District of New Jersey which granted partial summary judgment against Bandai. Midway Manufacturing Co. v. Bandai-America, Inc., 546 F.Supp. 125 (D.N.J.1982). Thereafter the parties to the action entered into a settlement agreement and license agreement, which was executed on August 27, 1982. They stipulated that Midway's copyrights were valid. Bandai took a license, under which it agreed to pay for past infringements and future sales at a royalty of $6.98 per game unit. Bandai also released Midway and Coleco
 
 
 3
 from any and all claims, causes of action, or demands, of whatever nature, anticipated or unanticipated, known or unknown, including without limitation all claims, causes of action, or demands which are contained in, may have been asserted in, may arise out of, or be in any way connected with, any of the matters referred to in any of the pleadings, records, or papers of record in this Action and all claims, causes of action, or demands for alleged violations of any of the patent laws, antitrust laws, or unfair trade practices laws, including the Copyright Act and Landham Act, with respect to the manufacture, use, sale, or marketing of the products of Midway or Coleco, or any of them.
 
 
 4
 Joint Appendix 152. Bandai agreed further:
 
 
 5
 Bandai acknowledges that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matters of this release but that it is their intention to, and they do hereby, fully, finally and forever settle and release any and all claims, demands and causes of action, known and unknown, suspected and unsuspected, of every kind and nature whatsoever, which now exist, may hereafter exist, or may heretofore have existed with respect to the subject matters of this release; in furtherance of such intention, Bandai acknowledges that the release herein given shall be and remain in effect as a full and complete general release, notwithstanding the subsequent discovery or existence of any such additional or different facts.
 
 
 6
 Joint Appendix 152. The parties to the agreement also agreed to file an order dismissing the pending action. Such an order was entered on November 3, 1982. It provides that the action is dismissed without prejudice, and that, subject to the terms and conditions of the settlement agreement, each party bears its own costs and attorneys fees.
 
 
 7
 Namco is the Japanese creator of the Pac-Man and Galaxian video games. Namco was not a party to the 1981 action, and the settlement agreement provides: "Nothing in this release shall be construed as constituting a release of Namco Company Ltd. or its subsidiaries and affiliates." Joint Appendix 152.
 
 
 8
 In July 1983, Bandai filed the instant action against Midway, Coleco and Namco seeking relief under the Copyright, Antitrust and other state and federal laws. Recognizing that it had released all possible claims in the August 27, 1982 settlement agreement, which resulted in the dismissal of the prior action, Bandai also sought relief from that settlement and the resulting judgment on the ground of fraud. Midway and Coleco counterclaimed for attorneys fees on account of Bandai's breach of the settlement agreement. The district court granted summary judgment against Bandai on its claim for relief from the judgment. It also granted summary judgment against Bandai on all of its other claims on the ground that they were barred by virtue of the 1982 settlement agreement and judgment. The court directed that the summary judgments in favor of Midway, Coleco and Namco be entered as final judgments pursuant to Fed.R.Civ.P. 54(b). The court also ordered that the application for an award of attorneys fees shall be made by a separate motion. Thus, the district court's grant of summary judgment as to liability does not determine what fees, if any, shall be awarded. Thereafter, however, the court considered the fee applications, and in a separate order on May 7, 1985 ruled that Midway and Coleco would be awarded fees in an amount to be determined. No Rule 54(b) determination is included in the May 7, 1985 order.
 
 II.
 
 9
 Bandai concedes that it cannot proceed with its other claims against Midway and Coleco unless it first succeeds in reopening the 1982 settlement and judgment. It claims, however, that the district court erred in entering summary judgment in favor of Midway and Coleco because there are material issues of disputed fact with respect to the claim that the settlement and judgment were procured by fraud.
 
 
 10
 Bandai's fraud claim is predicated upon certain correspondence which it discovered subsequent to August 27, 1982. Those letters can be read to suggest that although Namco and Midway had a written license agreement for the Pac-Man and Galaxian games in the United States and the western hemisphere, they had an oral agreement that at any time Namco requested the return of the licensed rights Midway would return them. Bandai also relies on representations made by Namco's attorney, during the course of a deposition of the President of Namco, that the understanding between Namco and Midway is as stated in writing. Thus, Bandai urges, it was lulled into the belief that Midway was the owner of the disputed rights, and did not explore a potential defense to the infringement action.
 
 
 11
 For purposes of summary judgment the district court drew an inference from the exhibits and the deposition that Namco had the right to recapture the licensed rights and that Midway had frustrated Bandai's discovery of that fact. Our review of a grant of summary judgment is plenary, and we draw the same inference. Thus the legal issue we must decide is, assuming Namco had recapture rights which Midway took steps to conceal, whether Bandai is entitled to relief from the settlement and judgment.
 
 
 12
 Whether we approach Bandai's claim as an action to set aside a release procured by fraud, or as a separate action for relief from a judgment, or as a Fed.R.Civ.P. 60(b)(3) motion, we find the tendered proofs offered by Bandai to be legally insufficient. We recognize that an attorney's deliberate attempt to mislead the court may be such a fraud as will permit the reopening of a judgment. Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 245-46, 64 S.Ct. 997, 1000-01, 88 L.Ed. 1250 (1944), questioned on other grounds, Standard Oil Co. of California v. United States, 429 U.S. 17, 18 n. 2, 97 S.Ct. 31, n. 2, 50 L.Ed.2d 21 (1976). We also realize that in this circuit no significance is attached to the distinction, sometimes articulated in the caselaw, between intrinsic and extrinsic fraud. Publicker v. Shallcross, 106 F.2d 949 (3d Cir.), cert. denied, 308 U.S. 624, 60 S.Ct. 379, 84 L.Ed. 521 (1939); Schum v. Bailey, 578 F.2d 493, 499 (3d Cir.1978) (Gibbons, J., concurring). In Publicker v. Shallcross this court set aside a settlement agreement because of perjured testimony. For purposes of this case we perceive no difference in the quality of proof required for relief from a settlement agreement and that required for relief from a judgment. Both involve the important element of finality in the disposition of litigation.
 
 
 13
 Relying on Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir.1983), Bandai urges that it has satisfied the burden of showing that it was prevented by the misconduct of Midway from "fully and fairly presenting [its] case." In Stridiron, however, the misrepresentations relied upon were clearly material to the outcome of the litigation. Moreover, in Stridiron there was no indication of neglect on the part of the moving party in pursuing the facts. Bandai's proofs are lacking in both of these respects.
 
 
 14
 Bandai urges that Namco's recapture rights were material in that such rights would have deprived Midway of standing, in the first action, to sue for infringement. Bandai's legal position is simply wrong. A transfer of copyright ownership is
 
 
 15
 an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license.
 
 
 16
 17 U.S.C. Sec. 101 (1982). Namco's recapture rights, if they exist, merely limit the time of Midway's license. Moreover, both the legal and the beneficial owners of copyrights have standing to sue infringers. 17 U.S.C. Sec. 501(b). Midway, as assignee, was the legal owner, and had standing in this capacity despite the beneficial owner's right to have legal ownership reassigned. See Williams & Wilkins Co. v. United States, 172 U.S.P.Q. 670, 674-76 (Ct.Cl.1972), rev'd on other grounds, 487 F.2d 1345, 203 Ct.Cl. 74 (1973), aff'd by an equally divided court, 420 U.S. 376, 95 S.Ct. 1344, 43 L.Ed.2d 264 (1975) (publisher of medical journals has standing to assert copyright infringement although third party reserves the right to have copyright assigned); Model Recitfier Corp. v. Takechiko International, 220 U.S.P.Q. 508 (C.D.Cal.1982), aff'd, 221 U.S.P.Q. 502 (9th Cir.1983) (assignment of trademark subject to termination on condition subsequent is valid).
 
 
 17
 Bandai urges that Crown Die & Tool Co. v. Nye Tool and Machine Works, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516 (1923), suggests a different rule. In Crown Die & Tool the Supreme Court held that an assignment by a patent owner of the right to sue one particular infringer did not give the assignee standing to sue for infringement. The court reasoned that "the right to exclude others conferred in a patent can only be conferred upon one who has the common law right to use, make and vend." Id. at 39, 43 S.Ct. at 257. Assuming arguendo that Crown Die & Tool would apply to copyrights and trademarks, it has no application to Midway, which received not merely an assignment of the right to sue infringers, but also the exclusive right to use the disputed copyrights in the western hemisphere.
 
 
 18
 Moreover, Bandai's tendered proofs do not establish that Midway's fraud prevented it from obtaining the facts about Bandai's recapture rights. Bandai chose to settle the first action even after the district court denied Midway's motion for summary judgment on Bandai's contention that the work covered by the copyright was derivative. In settling it surrendered the right to pursue additional discovery, and as noted in Part I above, acknowledged in the settlement agreement that it might thereafter discover additional facts. The record does not support the inference that Bandai's decision to relinquish further discovery was causally related to any alleged misrepresentation by counsel for Midway.
 
 
 19
 One other contention raised by Bandai deserves mention. It urges that the district court erred in approving a magistrate's bifurcation order that the fraud issue would be disposed of first, and that discovery would be limited, initially, to the fraud issue. Bifurcation orders and orders controlling the order of discovery are reviewed for abuse of discretion. See Franklin Music Co. v. American Broadcasting Companies, 616 F.2d 528, 538 (3d Cir.1979); Lis v. Robert Packer Hospital, 579 F.2d 819, 824 (3d Cir.), cert. denied, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978). The district court exercised the discretion under Fed.R.Civ.P. 42(b) to bifurcate issues "when separate trials will be conducive to expedition and economy." The ruling was clearly within the range of the court's discretion. The limitation on discovery permitted Bandai to explore all that Midway did to mislead either the parties or the court in the first lawsuit. Bandai has failed to show any prejudice from the limitation imposed.
 
 III.
 
 20
 The district court, in granting summary judgment for Namco, assumed that the action against Namco is barred by the settlement and judgment in the first action. We do not agree that Namco can rely on either.
 
 
 21
 Settlement agreements involve claim preclusion, not issue preclusion. United States v. International Building Co., 345 U.S. 502, 505-06, 73 S.Ct. 807, 808-09, 97 L.Ed. 1182 (1953). In subsequent litigation between the parties to a settlement agreement resulting in a consent decree, litigation of issues resolved in the agreement is precluded. Interdynamics, Inc. v. Firma Wolf, 653 F.2d 93, 97-98 (3d Cir.), cert. denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). See E. Wright, A. Miller & E. Cooper, 18 Federal Practice and Procedure, Sec. 4443 n. 23. That rule has no application, however, to Namco, which was not a party to the settlement agreement. Indeed Namco was expressly excluded from the release which that agreement contains. Thus Namco cannot use the settlement agreement or the judgment as a basis for estopping Bandai from pursuing the causes of action pleaded against it.
 
 
 22
 Namco, however, moved to dismiss the action against it for lack of personal jurisdiction. Service was accomplished pursuant to Fed.R.Civ.P. 4(e) and N.J. Court Rule 4:4-4, which authorizes the exercise of personal jurisdiction over nonresident corporations "to the uttermost limits provided by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207 (1971). Even though the underlying cause of action is based on federal law this court has held that the focus of inquiry must be upon the defendant's relationship to the state in which the forum court sits rather than to the United States. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280 (3d Cir.), cert. denied, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981).[2]
 
 
 23
 It is undisputed that neither Namco nor any of its subsidiaries which are named as parties has a general presence in New Jersey. Thus Namco's amenability to suit in that state depends upon whether there are enough contacts with New Jersey arising out of the Namco transactions pleaded in the complaint to justify the assertion of personal jurisdiction over Namco. Reliance Steel Products v. Watson, Ess, Marshall, 675 F.2d 587, 588 (3d Cir.1982). The district court correctly observed that the only transactional contacts between Namco and New Jersey alleged by Bandai involved its alleged participation elsewhere in Midway's effort to perpetrate a fraud on the district court and Bandai by concealing Namco's recapture rights. It nevertheless declined to dismiss for lack of personal jurisdiction.
 
 
 24
 We hold that Namco's motion to dismiss for lack of personal jurisdiction should have been granted. The sole basis for denying it relied upon by the district court was the existence of a material issue of disputed fact about Namco's recapture rights. We have held in Part II above that this misdirection was immaterial since as a matter of law it would not affect Midway's standing to sue Bandai for infringement. Assuming that Namco knew of and participated in the claimed fraud, the effect of that participation upon the lawsuit in New Jersey, as a matter of law, cannot support transactional long-arm jurisdiction because that effect was legally immaterial to the lawsuit.
 
 IV.
 
 25
 The summary judgment in favor of Midway and Coleco on the merits of the complaint will be affirmed. The summary judgment in favor of Namco will be affirmed on the ground that the district court lacks in personam jurisdiction over the Namco defendants. Although the parties have briefed the propriety of an award of counsel fees against Bandai, the summary judgment order dated May 7, 1985 makes no fee award. It is therefore interlocutory and unappealable. Thus we do not address the propriety of the ruling that fees in some amount must be paid. See West v. Keve, 721 F.2d 91, 94-97 (3d Cir.1983); DeLong Corp. v. Raymond International, Inc., 622 F.2d 1135, 1138-39 n. 3 (3d Cir.1980).
 
 
 
 [1]
 Since the Complaint seeks relief under the Copyright Act and the Sherman Act, the district court had jurisdiction pursuant to 28 U.S.C. Secs. 1337, 1338 (1982). It also had ancillary jurisdiction over the claim that the prior judgment should be set aside. Pacific Railroad v. Missouri Pacific Railroad, 111 U.S. 505, 522, 4 S.Ct. 583, 592, 28 L.Ed. 498 (1884)
 
 
 [2]
 While this court feels compelled to follow the precedent of DeJames it should be noted that the proposition for which it stands does not command universal acceptance. See DeJames, 654 F.2d at 292-93 (Gibbons, J., dissenting)