61 F.Supp. 854 (1945)
ST. LOUIS AMUSEMENT CO. et al.
v.
PARAMOUNT PICTURES, Inc., et al.
No. 3158.
District Court, E. D. Missouri, E. D.
August 6, 1945.
Mat J. Holland, of St. Louis, Mo. (Russell Hardy, of Washington, D. C., of counsel), for plaintiff.
Jacob M. Lashly and Israel Treiman, of Lashly, Lashly, Miller & Clifford, all of St. Louis, Mo., and Whitney North Seymour, of Simpson, Thatcher & Bartlett, Albert C. Bickford, and Armand F. Macmanus, all of New York City, for moving defendants (Julius H. Drucker, of St. Louis, Mo., of counsel), for moving defendant *855 Paramount Film Distributing Corporation and others.
S. Mayner Wallace, of St. Louis, Mo., for defendants American Arbitration Association and Harold D. Conner.
Rene J. Lusser, of St. Louis, Mo., for defendant Harry G. Erbs.
Mortimer A. Rosecan, of St. Louis, Mo., for defendants Adolph Rosecan, Joseph Litvag, and Apollo Theatre Corporation.
DUNCAN, District Judge.
The plaintiffs are motion picture exhibitors in the City of St. Louis and ask for an injunction and treble damages against the defendants for alleged violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note.
The defendants Paramount Film Distributing Corporation, RKO Radio Pictures, Inc., Twentieth-Century-Fox Film Corporation and Warner Bros. Pictures Distributing Corporation are distributors of motion pictures.
The defendants Adolph Rosecan, The Princess Theatre, Joseph Litvag and The Apollo Theatre, are moving picture exhibitors in the City of St. Louis.
The defendants Harry Erbs and Harold D. Conner, are employes and representatives of the American Arbitration Association.
Plaintiffs seek to enjoin defendants from continuing or participating in arbitration proceedings relative to clearance with respect to the theatres of the plaintiffs, and from making or observing any award, decision or judgment in any arbitration proceedings and from in any manner limiting or restricting themselves in or refraining from making contracts, licenses or other agreements with plaintiffs for motion pictures upon such terms and conditions as the plaintiffs and defendants may independently, freely and voluntarily agree to and as may be satisfactory to themselves.
The matter is before the court on motions of the defendants to dismiss the complaint and for summary judgment.
On July 20, 1938, the United States filed a petition in equity in the United States District Court for the Southern District of New York, entitled "United States of America vs. Paramount Pictures Incorporated et al.," wherein it charged various defendants, including the defendants Paramount Film Distributing Corporation, RKO Radio Pictures, Inc., Twentieth-Century-Fox Film Corporation and Warner Bros. Pictures Distributing Corporation, with violating the Sherman Anti-Trust Act.
In its petition the Government among other things, attacked certain trade practices in the motion picture industry, and among those practices was that of "clearance,"[1] and sought relief against the continuance of such practice. During the consideration of that action, a decree was consented to by all of the parties to the suit, and such consent decree was entered on the 14th day of November, 1940.
The consent decree is quite long and apparently was intended to cover every phase of the relations between distributors and exhibitors, in the moving picture industry.
Paragraph I of the decree provides:
"The Court has jurisdiction of the parties hereto; and for the purposes of this decree and of proceedings for the enforcement thereof, and for no other purpose, the Court has jurisdiction of the subject matter hereof and the complaint states a cause of action against the defendants under the Act of Congress of July 2, 1890 entitled `An Act to Protect Trade and Commerce Against Unlawful Restraints and Monopolies.'"
Paragraph II provides:
"Each consenting defendant, its successors, officers, directors, agents and employees, and all persons and corporations acting under, through, or for it, hereby is and are enjoined from doing the acts prohibited by this decree, and is and are directed to do the acts thereby required."
A rather elaborate system of arbitration was provided for in the decree in the event of disputes between the distributors and the exhibitors, and the American Arbitration Association of New York City, one of the defendants herein, was named as administrator. A Board of Appeals from such arbitration is also provided and large sums of money are made available for the payment of the expenses of the administrator. The country is divided into various arbitration districts wherein the administrator *856 maintains offices and tribunals before which proceedings may be filed and arbitration had.
It is provided in the Decree that it shall operate for a trial period of three years from the date of its entry, and that jurisdiction is retained for the purpose of enabling any of the parties to the decree to apply to the court at any time for such orders and directions as may be necessary and appropriate for the construction of, or carrying out of the decree, and for the punishment of the violators thereof.
Paragraph (d) of Section XXIII provides that any of the parties may apply to the court at any time more than three years after the date of the entry for any modification thereof.
The American Arbitration Association as the administrator, has been carrying out its duties in the City of St. Louis under the provisions of the decree since the entry thereof, and has been arbitrating such disputes as have been submitted to it.
Section VIII is the section of the decree applicable to "Clearance" and in this section it is stated:
"It is recognized that clearance, reasonable as to time and area, is essential in the distribution and exhibition of motion pictures."
The section then proceeds in seven paragraphs, to define certain conditions and circumstances which are to be taken into consideration by the arbitrator in matters referred to it under this section.
Plaintiffs charge in their complaint that the moving defendants, and the defendants American Arbitration Association and its officers, who are parties to this action, have entered into a conspiracy and are engaged in a combination in restraint of trade and commerce under the Act of Congress of July 2, 1890, and that as a part of such combination and conspiracy, the defendants have arranged and agreed that they will refuse to enter into contracts to supply moving pictures to any and all exhibitors (except exhibitors in whose theatres the distributors have an interest) against whom awards have been made by the American Arbitration Association other than upon the terms and conditions provided in such awards.
It is further charged that there is an arrangement and agreement and conspiracy by which the defendants refuse to enter into contracts and to supply motion pictures to the plaintiffs except upon terms and conditions stated in awards of the American Arbitration Association.
Plaintiffs contend that the court in the Southern District of New York, although having jurisdiction of the parties and of the subject matter, exceeded its authority in entering a consent decree and was without power to create an authority for the arbitration of disputes arising between the distributors and exhibitors of moving pictures; that the only power of the court under the Act was to restrain and prevent the defendants from performing acts that constituted restraint of trade under the Anti-Trust Act; therefore, that the decree conferred no jurisdiction upon the administrator, the American Arbitration Association; that under the provisions of the decree, it was for a trial period of three years, and that following that period of three years the Government filed an application for the modification of the decree, which application is now pending, and the decree is not now in effect.
Those matters may be taken up in reverse order. Section XXI of the decree provides:
"Petitioner, by its counsel, has represented to the Court that the public interest requires that the provisions of this decree shall operate for a trial period of three years from the date of entry hereof."
Read alone, this sentence indicates that it was the intention of the parties that the decree should expire at the end of three years. However, this sentence and the section of which it is a part, must be read in connection with the entire decree.
We find in paragraph (d) of Section XXIII this language:
"Enabling any of the parties to this decree to apply to the Court at any time more than three years after the date of the entry of this decree for any modification thereof;".
Paragraph (e) of the same section:
"Enabling any consenting defendant to apply to the Court at any time more than three years after the date of the entry of this decree, to vacate this decree, or any modification thereof, on the ground that under the economic or competitive conditions existing at the time of such application, this decree or any modification thereof, or any provision thereof, * * *."
*857 It is clear from reading these sections that the decree should be in effect uninterrupted for a period of three years, and that thereafter any of the persons might move to modify it.
Therefore, the decree is now in effect, and that contention of the plaintiffs must be decided against them.
Authority is conferred upon the Attorney General to enforce the Act and to that end he is authorized to institute suits in the District Courts of the United States, and in the performance of his duties he is authorized to enter into Consent Decrees. It is admitted in this case that the court did have jurisdiction of the parties and of the subject matter, and the court had authority to enter a consent decree.
Even though a court may disagree with a court of coordinate jurisdiction as to the efficacy of the provisions of a decree, or the advisability of entering such a decree, yet, if the coordinate court has jurisdiction to enter the decree, and there is no dispute about that right here, this court may not review such decree for errors. As a matter of comity, courts of coordinate jurisdiction should respect each other's decrees, unless, of course, a decree is void. Torquay Corporation v. Radio Corporation of America, D.C., 2 F.Supp. 841. In that case, as in this, a consent decree in a court of coordinate jurisdiction was in question. Judge Knox stated (2 F.Supp. loc.cit. 844):
"Assuming for the moment that this court has jurisdiction of the present suit, it is clear, as a matter of comity and of the orderly administration of justice, that this court should refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal court. Especially is this so where it is clear that the United States District Court in Delaware would have jurisdiction of such a suit as is now before this court. A bill to modify or restrain the enforcement of a decree of a federal court may undoubtedly be brought in the court which entered such decree. Pacific R. of Missouri v. Missouri Pacific R. Co., 111 U.S. 505, 4 S.Ct. 583, 28 L.Ed. 498. See Johnson v. Christian, 125 U.S. 642, 8 S.Ct. 1135, 31 L.Ed. 820; Sherman National Bank v. Shubert Theatrical Co., 2 Cir., 247 F. 256. See, also, Foster Federal Practice (6th Edition) §§ 51, 132. Furthermore, the consent decree stated that `jurisdiction is hereby expressly reserved for the purpose of enforcing or modifying this decree on application of any of the parties hereto.' While the present plaintiff was not a party to the Delaware suit, complainant is suing as a stockholder on behalf of itself and other stockholders of the Radio Corporation. That company was a party to the decree, and complainant's rights, if any, would seem to be more properly justiciable in the court that made the decree, out of which complainant's grievance arises, than here."
The plaintiffs however contend that while the New York Court had jurisdiction of the parties and of the subject matter, it exceeded its authority in setting up the rather elaborate system of arbitration; that such action was outside of the scope of authority of the Act which conferred jurisdiction on the court; that the provisions of the decree in respect of arbitration were legislative rather than judicial, and that the court had no authority whatsoever to create or set up a system for arbitration, and therefore, its decree in that respect is void.
While the court should not review a decree of a coordinate court for errors, it is not bound by a judgment or a decree of a coordinate court where that decree or judgment is void. Such a judgment is binding upon no one. Elliott v. Peirsol's Lessee, 1 Pet. 328, 7 L.Ed. 164; San Jacinto Finance Corporation v. Perkins, Tex.Civ.App., 94 S.W.2d 1213; O'Banion v. Weaver, Tex.Civ.App., 62 S. W.2d 212.
We find in the decree at the very beginning of Section VIII the statement that:
"It is recognized that clearance, reasonable as to time and area, is essential in the distribution and exhibition of motion pictures."
In considering this question we must start with the premise that it is necessary in the conduct of the business of distributing and exhibiting motion pictures to have some rules and regulations as to arrangement between the distributors and exhibitors with respect to clearance, or with respect to the length of time between the showing of such moving pictures in one type of theatre and in another type of theatre, in the same city, or in the same community. That situation has long been *858 recognized in the industry as a cause of much controversy, and has resulted in expensive litigation.
So, we must admit that we are dealing with a highly complicated, and highly controversial phase of the moving picture industry and one which cannot be solved by simple, direct methods. It being a complicated subject, it may have to be met by complicated methods.
Under the Act empowering the court to restrain or prevent the doing of things in restraint of trade, we find no yardstick or specific provisions to guide or direct the court in saying what is or what is not reasonable clearance in the moving picture industry. Certainly many consent decrees in monopoly cases have required the doing of affirmative acts such as the divesting of ownership in certain types of stocks and securities, the disposition of property, even prescribing the method of conducting the business of those properties, so as not to result in restraint of trade.
I am willing to admit arguendo, that the Consent Decree, in setting up a Board of Arbitration, and providing for rules and regulations for the conduct of the tribunals provided for, is considerably broader than any other cases I have been able to find, yet, in view of the complicated nature of the subject with which the court was dealing, and the apparent impossibility of defining set rules by which each case may be determined, I cannot say that the District Court for the Southern District of New York, having jurisdiction, was without authority to provide in its decree for the submission of "clearance" disputes to arbitration, and providing the machinery for such arbitration. A court in considering whether or not the judgment or decree of a court of coordinate jurisdiction is void, should resolve every doubt, in favor of the validity of the decree, and of the authority of the court otherwise having jurisdiction, to enter the decree.
In this case the question, so far as these motions are concerned, is  whether the United States District Court for the Southern District of New York, exceeded its authority in entering the Consent Decree by setting up the Board of Arbitration and enjoining the parties before it from entering into any contract with respect to clearance in violation of a determination by the arbitrators.
Every jurisdictional fact necessary to enter the decree was present  it was consented to by the Attorney General, the chief law enforcement officer of the United States, the officer charged with the responsibility of enforcing the anti-trust laws, and the representative in such proceedings of the public and all who may be affected by a violation of the anti-trust laws.
I cannot say that the consent decree of the District Court of the United States for the Southern District of New York, a court of coordinate jurisdiction, is void. If it isn't void, the parties to that action are bound by the decree and this action should be dismissed.
Movants contend, as one ground for dismissal, that the United States is a necessary party. In view of the court's ruling, it is not necessary to pass on that question.
The motions of defendants to dismiss and for summary judgment are sustained.
NOTES
[1] "Clearance" is defined in Section VIII of the Consent Decree as "the period of time, fixed by agreement between a distributor and exhibitor, prior to the expiration of which a feature licensed for prior exhibition in a theatre may not be exhibited in another theatre or theatres."