The judgment is modified as to the amount of interest, and as modified, affirmed.

## ST. LOUIS AMUSEMENT CO. et al. v. PARAMOUNT FILM DISTRIBUTING CORPORATION et al.

### No. 13502.

Circuit Court of Appeals, Eighth Circuit.

July 6, 1948.

Russell Hardy, of Washington, D. C. (Mat J. Holland and James H. Arthur, both of St. Louis, Mo., on the brief), for appellants.

Albert C. Bickford, of New York City (Jacob M. Lashly, Israel Treiman, Julius H. Drucker, Lashly, Lashly, Miller & Clifford, all of St. Louis, Mo., and Simpson, Thacher & Bartlett, of Washington, D. C., on the brief), for appellees Paramount Film Distributing Corporation, RKO Radio Pictures, Inc., Twentieth Century-Fox Film Corporation and Warner Bros. Pictures Distributing Corporation.

S. Mayner Wallace, of St. Louis, Mo., (Edwin Foster Blair, of New York City, and Wesley A. Sturges, of New Haven, Conn., on the brief), for appellees American Arbitration Ass'n. and Harold D. Conner.

Before SANBORN, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The appeal is from a summary judgment entered against the plaintiffs on motions of the defendants. The trial court's opinion appears in 61 F.Supp. 854.

The action is one under the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq., brought by six motion picture exhibitors in St. Louis, Missouri, operating a total of 31 local theatres, against five major distributors in the industry,[1] together with the American Arbitration Association, two of its agents, and the separate operators of two other movie theatres in St. Louis,[2] for injunctive relief and treble damages.

The combination and conspiracy relied on consisted of an alleged agreement among the defendant distributors not to make any license contracts for films with an exhibitor against whom the American Arbitration Association should have entered an award fixing the clearance period[3] between such exhibitor's theatre and other theatres, except upon the basis of the period prescribed by the award. The American Arbitration Association and its two agents were claimed to be a party to the combination and conspiracy in that the Arbitration Association had consented to receive complaints from exhibitors on clearance questions and to make decisions and awards on the complaints, which necessarily would affect the situation of other exhibitors. The operators of the two local movie theatres referred to were charged with having joined the combination and conspiracy by having filed complaints with the Arbitration Association seeking an award on the clearance rights of each of such theatres in relation to the theatres of plaintiffs.

The complaint further alleged that on one of these complaints the Arbitration Association had entered an award directing the distributors (all of which were parties to the proceeding) to reduce the clearance period which they had previously allowed plaintiffs' theatres as against the complaining theatre from fourteen to seven days; that the distributors had since that time refused to contract or supply pictures to plaintiffs except on the basis of this reduced clearance period; that the clearance reduction had resulted in a loss of patronage at plaintiffs' theatres amounting to and occasioning damages to plaintiffs in the

---

[1] While the complaint lists five distributors as defendants, one of the distributors seems to have been named under both its former and present corporate names. Actually therefore only four distributors appear to be involved.

[2] The complaint names other parties as defendants but they were apparently not validly served with process and are not before us on the appeal.

[3] "A clearance is the period of time, usually stipulated in license contracts, which must elapse between runs of the same feature within a particular area or in specified theatres." United States v. Paramount Pictures, Inc., 68 S.Ct. 915, 923, footnote 6.

sum of $95,000;[4] and that plaintiffs would similarly continue to suffer great loss and damage in the future because of the situation unless injunctive relief were granted.

As to the complaint filed on behalf of the second theatre, it was alleged that the Arbitration Association was taking steps looking toward the making of an award[5] and that plaintiffs thus were being threatened with a reduction also in the clearance period theretofore enjoyed by them against this theatre.

On the allegations so far stated, the complaint could present a situation that might fall within Paramount Famous Lasky Corporation v. United States, 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145, affirming United States v. Paramount Famous Lasky Corporation, D.C., S.D.N.Y., 34 F.2d 984, on which plaintiffs rely. But this is not the whole of the complaint. The complaint further showed that the agreement which was claimed to constitute the unlawful combination and conspiracy had consisted in fact of the execution by each of the distributors of a written consent to the entering of an interlocutory decree in a general anti-trust suit, brought against them and others in the film industry by the Attorney General in the District Court for the Southern District of New York, entitled United States of America, Plaintiff, v. Paramount Pictures, Inc., et al Defendants, 70 F.Supp. 53. It was under the provisions of this consent decree that the arbitration system for the handling of clearance complaints by exhibitors was set up and that the consenting defendants became bound to abide by the results of any awards so made.

The arbitration system as provided for in the consent decree was obviously merely "an auxiliary enforcement procedure" which the court authorized to be used during the pendency of the action or until a modification or vacation of the consent decree. The final decree entered by the statutory three-judge court, which heard the case ultimately on its merits, terminated the arbitration set-up, "except in so far as may be necessary to conclude arbitration proceedings now pending and to liquidate in an orderly manner the financial obligations of the defendants and the American Arbitration Association, incurred in the establishment of the consent decree arbitration systems." See United States v. Paramount Pictures, Inc., D.C., S.D.N.Y., 70 F.Supp. 53, 75. But in the written opinion which the court filed preceding the formulation of its decree, it took occasion to comment that the arbitration system had been of "demonstrated usefulness" as an enforcement expedient during the pendency of the action, Id., 66 F.Supp. 323, 333, and it also made a formal finding, No. 160, that "The arbitration system created by the Consent Decree of November 20, 1940, has demonstrated its usefulness in dealing with exhibitors' complaints of unreasonable clearance * * *." Id., 70 F.Supp. at page 71. Again, in connection with the final decree, the court emphasized its previous comment and said: "The arrangement for arbitration and an appeal board has been terminated except as to unfinished litigations and other matters referred to in the decree, because of the unwillingness of some of the parties to consent to their continuance. Nevertheless, as we have indicated in the opinion, these tribunals have dealt with trade disputes, particularly those as to clearances and runs, with rare efficiency, as both government counsel and counsel for other parties have conceded." Id., 70 F.Supp. at page 76.

The decree of the three-judge court (in which clearance relations in the motion picture industry was only one of the many questions involved) was made the subject of appeals by the various parties in the suit to the Supreme Court. We are not here concerned with any of the matters considered and discussed by the Supreme Court in its opinion on the appeals, except as to the use of the arbitration system and the expressions made in relation thereto,

[4] From the award, which was made a part of the showing in support of the distributors' motion for a summary judgment, it would appear that the only one of the plaintiffs actually involved in that arbitration proceeding was St. Louis Amusement Co., and that it in fact had filed a consent to the arbitration and an agreement to be bound by the award.

[5] The brief of the distributors here states that during the pendency of the present action no further steps have been taken in this arbitration proceeding.

or such light as they may throw upon the merits of plaintiffs' contentions here.

It is plaintiffs' contention that the court in the anti-trust case in New York could not validly make a provision in its decree for an arbitration system; that even though the setup was made with the consent of the parties in the case it was in effect the creation of a private judicial system; that in any event the creation of an arbitration system and the attempt to fix rules governing clearances were legislative matters which would lie solely within the jurisdiction of Congress; that the arbitration provisions of the consent decree were therefore void; and that the agreement of the distributors to the creation and maintenance of the system and to be bound by the awards under it constituted accordingly an unlawful combination and conspiracy, falling within Paramount Famous Lasky Corporation v. United States, supra, 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145.

In entering summary judgment against the plaintiffs, the trial court held that the arbitration provisions of the consent decree in the New York case could not be declared to be invalid and that there was no basis therefore for plaintiffs' contention that the consent of the several distributors to the provisions was of itself an unlawful agreement, combination and conspiracy. The trial court disposed of the action before the decree on the merits had been entered in the New York case and before the appeals had been taken from that decree to the Supreme Court. At the time the matter was argued here, the appeals to the Supreme Court were awaiting hearing, and we have allowed our disposition to await the decision and opinion of the Supreme Court.

■ In the opinion only recently handed down by the Supreme Court, United States v. Paramount Pictures, Inc., 68 S.Ct. 915, the following is said about the arbitration system under the consent decree and the right of the court, in its discretion, to make provision for such a system under the final decree:

"The consent decree created an arbitration system which had, in the view of the District Court, proved useful in its operation. The court indeed thought that the arbitration system had dealt with the problems of clearances and runs 'with rare efficiency.' But it did not think it had the power to continue an arbitration system which would be binding on the parties, since the consent decree did not bind the defendants who had not consented to it and since the government, acting pursuant to the powers reserved under the consent decree, moved for trial of the issues charged in the complaint. The District Court recommended, however, that some such system be continued. But it included no such provision in its decree.

"We agree that the government did not consent to a permanent system of arbitration under the consent decree and that the District Court has no power to force or require parties to submit to arbitration in lieu of the remedies afforded by Congress for enforcing the anti-trust laws. But the District Court has the power to authorize the maintenance of such a system by those parties who consent and to provide the rules and procedure under which it is to operate. The use of the system would not, of course, be mandatory. It would be merely an auxiliary enforcement procedure, barring no one from the use of other remedies the law affords for violations either of the Sherman Act or of the decree of the court. Whether such a system of arbitration should be inaugurated is for the discretion of the District Court." 68 S.Ct. at page 938.

■ We do not believe that more is necessary to indicate the correctness of the trial court's order in the present case. The mere agreement on the part of each distributor to the setting up of an arbitration system under the provisions of the consent decree for handling clearance controversies, with the rules for conducting the proceedings approved by the District Court, and the commitment of each exhibitor as part of its consent to abide by any final award in a proceeding to which it had been a party did not constitute a violation of the Sherman Act.

We ought perhaps to make it clear that it was provided in the consent decree that "The power of the arbitrator in deciding any such controversy shall be limited to making (1) a finding as to whether or not

the clearance complained of is unreasonable; and, if the finding be in the affirmative, (2) an award fixing the maximum clearance between the theatres involved which may be granted in licenses thereafter entered into by the distributor defendant which is a party to the arbitration."

■ It was not possible therefore to touch rights under existing contracts and, as the opinion of the Supreme Court points out, there was no bar to the exercise of any right under the Sherman Act for wrongs which had been done. But, as we have indicated, the refusal, during the time the consent decree was in effect, of such distributors as had been party to an arbitration proceeding on a clearance period, under a complaint filed by some exhibitor, of which plaintiffs were given notice and had an opportunity to intervene, to agree with plaintiffs on a longer clearance against the theatre of the complaining exhibitor than that fixed in the arbitration award, could not, without more in the situation, in view of the prohibition of the decree, be claimed to constitute an actionable combination or conspiracy under the statute.

■ Plaintiffs have made the further contention that the refusal of the defendant distributors here, on the basis of the consent decree, to make agreements on clearances after November 19, 1943, contrary to any awards which had been made in arbitration proceedings, was in any event an unlawful combination and conspiracy, because the provisions of the consent decree ceased to be operative after that date. But the provision in the decree on which plaintiffs rely was merely one that was intended to leave the consent decree operative generally for three years without modification. There was no provision automatically terminating the decree at the expiration of that time, but instead it was provided that jurisdiction was retained to enable any party "to apply to the Court at any time more than three years after the date of the entry of this decree for any modification thereof." Without such a modification, the arbitration provisions remained in effect down to the time of the decree on the merits, as the court recognized in its rendition of that decree. See 70 F.Supp. at pages 75, 76.

The other contentions of plaintiffs are without merit and do not require discussion.

The judgment is affirmed.