Irene WELDON, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 92–CV–952.

United States District Court,
N.D. New York.

March 3, 1994.

Peter M. Hartnett, Hartnett Law Offices, Syracuse, NY, for plaintiff.

Jeffrey Axelrad, Director, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC (Roger D. Einerson, Asst. Director, Torts Branch, of counsel), for U.S.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

### INTRODUCTION

In *Weldon v. United States*, 744 F.Supp. 408 (N.D.N.Y.1990) (*"Weldon I"*), this court granted defendant United States' motion for summary judgment, finding that plaintiff failed to raise any material issues of fact to warrant a trial on her claim for damages under the Federal Tort Claims Act and the Swine Flu Act and that the United States was entitled to judgment on those claims as a matter of law. This independent equity action seeks vacatur of the court's judgement in favor of the United States in *Weldon I* on the ground that the defendant United States committed fraud upon the court both at the trial and appellate levels. Presently before the court are defendant's motions for dismissal, or in the alternative, for summary judgment on the grounds that (1) this court lacks subject matter jurisdiction over the controversy at bar, (2) the complaint fails to state a claim of fraud or fraud upon the court, and (3) summary judgment is appropriate because there is no genuine issue of material fact in dispute. Plaintiff cross-moves for summary judgment, for suppression of several affidavits offered by defendant, and to strike defendant's answer. Oral argument was heard on November 13, 1992, after which the court reserved decision. This Memorandum–Decision and Order constitutes the court's final decision regarding these motions.

### BACKGROUND

On October 20, 1981, plaintiff filed a complaint under the National Swine Flu Immunization Program of 1976 and the Federal Tort Claims Act ("FTCA") alleging that she developed several neurologic disorders, including Guillain–Barre Syndrome ("GBS"), as a result of a swine flu vaccination she received on November 16, 1976 at the PennCan Mall in North Syracuse, New York. The action was transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the District of Columbia for coordinated pretrial proceedings. Subsequently, the action was returned to this court for further proceedings, and on April 7, 1989, defendant filed a motion for summary judgment.

Defendant's motion for summary judgment was based upon four grounds. First, defendant contended that the neurologic illness plaintiff suffered in 1979 was a central nervous system disorder and not GBS, which is a peripheral nervous system disorder. Second, defendant contended that the swine flu vaccine did not cause plaintiff's illness, regardless of diagnosis. Third, defendant contended that plaintiff could not establish a theory of liability under New York law. Fourth, defendant asserted that plaintiff's failure to respond to requests for admissions that were dispositive of each of the previous issues mandated summary judgment regardless of the evidence produced by plaintiff.

On September 13, 1990, this court granted the government's motion for summary judgment based on two grounds. First, the court found that plaintiff did not suffer from GBS. Second, the court found that the swine flu vaccination plaintiff received in 1976 did not cause the neurologic illness she suffered in February 1979. *See Weldon I*, 744 F.Supp. at 410–13.

On September 27, 1990, plaintiff filed motions to reopen the judgment pursuant to Rules 59 and 60(b) of the Federal Rules of Civil Procedure, and for further discovery pursuant to Rule 56(f). Plaintiff's motions were denied by the court on January 15, 1991. On February 8, 1991, plaintiff filed a notice of appeal with the United States Court of Appeals for the Second Circuit, challenging the appropriateness of summary judgment on the issues of diagnosis and causation. The Second Circuit affirmed the court's judgment on November 26, 1991, 952 F.2d 394. Plaintiff's subsequent petition for

rehearing was denied. Finally, on June 15, 1992, the Supreme Court denied plaintiff's petition for a writ of certiorari, —— U.S. ——, 112 S.Ct. 2973, 119 L.Ed.2d 592. Nine days later, on July 24, 1992, plaintiff returned to this court to file her present complaint.

The basis for the instant action is plaintiff's claim that defendant repeatedly and fraudulently misrepresented the record concerning the viewpoints of several potential witnesses in *Weldon I*. The misrepresentations allegedly spanned the time period from oral argument and memoranda in support of the motion for summary judgment in *Weldon I* to defendant's briefs submitted to the Second Circuit on appeal. Additionally, plaintiff contends that defendant's attorney improperly interviewed plaintiff's treating physicians during the pendency of *Weldon I*. Plaintiff charges that defendant's conduct constituted (1) fraud, misrepresentation, and other misconduct within the meaning of Fed.R.Civ.P. 60(b)(3), and (2) "fraud upon the court" within the meaning of Fed.R.Civ.P. 60(b). The complaint seeks equitable relief in the form of an order vacating the September 13, 1990 summary judgment, scheduling the original case for trial, and awarding costs, disbursements, and attorney's fees in this equity action.

### DISCUSSION

#### A. *Jurisdiction*

■ As an initial matter, the court must determine whether it has jurisdiction to hear this dispute. Plaintiff bears the burden of persuasion on the existence of federal jurisdiction. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 612 n. 28, 99 S.Ct. 1905, 1913 n. 28, 60 L.Ed.2d 508 (1979).

■ Federal Rule of Civil Procedure 60(b) allows relief from a final judgment in a civil case for any of six enumerated reasons, including fraud, misrepresentation, or other misconduct of an adverse party, Fed.R.Civ.P. 60(b)(3), as well as "any other reason justifying relief from the operation of the judgment". Fed.R.Civ.P. 60(b)(6). The Rule contemplates two distinct procedures for ob-

taining relief from a final judgment: post-judgment motion, or independent action. If the former procedure is pursued, a motion alleging fraud under Rule 60(b)(3) must be filed within one year after judgment was entered, and a motion based on "any other reason" must be filed within a "reasonable time." If the latter procedure is pursued, there is no specified time limitation within which an aggrieved party must institute an independent action for relief from judgment based on a fraud upon the court. *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir.1985). A party proceeding by post-judgment motion need not establish the jurisdiction of the court, because the court already has jurisdiction based on the underlying suit. Where the party invokes that portion of 60(b) which permits an independent action, however, he must support the action with independent jurisdictional grounds. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 70 (2d Cir.1990); *see also Woodrum v. Southern Railway Company*, 750 F.2d 876, 882–83 (11th Cir.1985) (by its terms Rule 60(b) only preserves otherwise existing jurisdiction; it does not create jurisdiction), *cert. denied*, 474 U.S. 821, 106 S.Ct. 71, 88 L.Ed.2d 58 (1985).

In this case, plaintiff opted to file an independent action charging a fraud upon the court, and thus she must establish an independent jurisdictional basis. In its motion to dismiss plaintiff's complaint, the United States strenuously argues that the principle of sovereign immunity precludes the court's jurisdiction over this action. Plaintiff responds by citing "the historic power of equity to set aside fraudulently begotten judgments," *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 245, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944), and arguing that jurisdiction in the case at bar is ancillary to that in *Weldon I*. Because this circuit has not squarely addressed the issue of whether sovereign immunity precludes an independent action against the United States for fraud upon the court, the court first looks to the presently competing principles behind the doctrine of sovereign immunity and the tradition of the court's equity powers.

■ The concept of sovereign immunity is of ancient vintage. While legal scholars de-

bate the origin of the doctrine,[1] the Supreme Court has declared that "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction" in federal district court. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). The doctrine of sovereign immunity thus precludes suit against the federal government unless the United States expressly waives its immunity. *See generally United States v. Nordic Village, Inc.*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). A waiver of sovereign immunity must be clear, express, and unambiguous; it cannot be implied from vague language. *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941) ("consent, since it is a relinquishment of sovereign immunity, must be strictly interpreted"); *Nordic Village*, —— U.S. at ——, 112 S.Ct. at 1015 ("consent to be sued must be construed strictly in favor of the sovereign, and not enlarged ... beyond what the language requires" (quotations and citations omitted)).

According to the government, the relief requested by plaintiff can not be granted by the court because the United States has not waived its sovereign immunity from tort claims seeking equitable relief. Rather, it argues, waiver of sovereign immunity under the Federal Tort Claims Act is limited to tort suits seeking *money* damages. *See* 28 U.S.C. § 1346(b) ("district courts ... shall have jurisdiction of civil actions on claims against the United States, for money damages"). Therefore, defendant argues, plaintiff's claim must fail in light of the inviolable defense of sovereign immunity.

Notwithstanding the protestation of the United States, the court concludes based on Second Circuit precedent that it has ancillary jurisdiction over the present dispute.

▮▮▮ In *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 70 (2d Cir.1990), the Second Circuit held that

> [w]hen the basis for federal jurisdiction of the original suit no longer exists, either because there is no longer diversity of citizenship or because the claims in the new suit do not arise under federal law, the district court that entered the original judgment has inherent "ancillary" equitable jurisdiction to entertain the suit for relief from the judgment. 922 F.2d at 70.

The court cited two cases to support this principle. In *Pacific R.R. of Missouri v. Missouri Pac. Ry.*, 111 U.S. 505, 521–22, 4 S.Ct. 583, 592, 28 L.Ed. 498 (1884), the Supreme Court found that where the diversity upon which jurisdiction of the original suit rested was destroyed before initiation of the second suit, there was "no doubt" that the lower court that entered the earlier decree had jurisdiction to hear a suit seeking vacatur of the decree based on fraud. Jurisdiction existed, the Court held, because "[t]he bill [of review], though an original bill in the chancery sense of the word, is a continuation of the former suit, on the question of the jurisdiction of the ... Court."[2] *Pacific R.R. of Missouri*, 111 U.S. at 522, 4 S.Ct. at 592. In *Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d 798, 800 n. 1 (1960), the Second Circuit expanded the holding of *Pacific R.R. of Missouri*, holding that where the independent action to set aside a judgment on the basis of fraud is brought before the court that rendered the original judg-

---

1. For many years legal theorists agreed that the notion of sovereign immunity was rooted in the theory of divine rights of kings. *See generally* 12 MOORE'S FEDERAL PRACTICE, ¶ 300.03[1], at 1–45—1–49; David E. Engdahl, *Immunity and Accountability for Positive Governmental Wrongs*, 44 COLO.L.REV. 1, 3 (1972). As expressed by Blackstone, "The King can do no wrong." 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAW OF ENGLAND 244, 246. In recent years others have theorized that sovereign immunity was an accidental outgrowth of the feudal system. Because the Monarch stood at the apex of the feudal pyramid, no court could

exercise jurisdiction over the Crown. *See, e.g., Nevada v. Hall*, 440 U.S. 410, 415, 99 S.Ct. 1182, 1185, 59 L.Ed.2d 416 (1978) ("[t]he King's immunity rested primarily on the structure of the feudal system and secondarily on a fiction that the King could do no wrong").

2. The independent action in equity created under Rule 60(b) preserves the substance of the old ancillary common law and equitable remedies of audita querela, coram nobis, bill of review and bill in the nature of a bill of review. 7 MOORE'S FEDERAL PRACTICE ¶ 60.13, at 60–83.

ment, ancillary jurisdiction over the independent action exists despite the absence of the diversity of citizenship *or* federal question that formed the basis of the court's jurisdiction over the original action.

In adopting the reasoning of *Pacific R.R. of Missouri* and *Martina Theatre, Cresswell* serves to illuminate the principles which guide the court in its analysis of the delicate balance between the court's equitable powers and the traditional limitation of sovereign immunity. Although *Cresswell* did not directly address the issue at bar, it is indicative of a view that independent actions in equity are derivative of the initial litigation. For example, it broadly notes that "[a]ncillary jurisdiction is sufficiently flexible that the action may be maintained against a person who was not a party to the original action," including persons who were attorneys in that action. 922 F.2d at 60 (citing *Valerio v. Boise Cascade Corp.*, 645 F.2d 699, 700 (9th Cir.) (per curiam), *cert. denied*, 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981)).

This language mirrors the language used by Professors Moore and Lucas to examine ancillary jurisdiction in their treatise. 7 MOORE'S FEDERAL PRACTICE ¶ 60.-38[1], at 60–398. Professors Moore and Lucas continue from this premise to conclude that "an independent action when brought in the court which rendered the judgment should be regarded as such a continuation of the former action, in accordance with the *Pacific Railroad of Missouri* doctrine, that it is maintainable against the United States, with or without consent." *Id.* at 60–399. Such a conclusion is demanded, they argue, by "elementary principles of fairness and justice." *Id.* This court agrees.

The court acknowledges that several courts in other circuits have held differently. *See, e.g., United States v. Timmons,* 672 F.2d 1373 (11th Cir.1982); *Gherwal v. United States,* 46 F.2d 998 (9th Cir.1931); *Jones v. Watts,* 142 F.2d 575 (5th Cir.1944); *Zegura v. United States,* 104 F.2d 34 (5th Cir.), *cert.*

*denied,* 308 U.S. 586, 60 S.Ct. 109, 84 L.Ed. 490 (1939). In *United States v. Timmons* the Eleventh Circuit explicitly rejected the principal argument raised by plaintiff in the instant case, that an independent action brought in the court which rendered the judgment under attack should be regarded as a continuation of the former action maintainable against the government with or without its consent. 672 F.2d at 1378–79. Citing *Jones* and *Zegura,* the *Timmons* court explained that "[r]egardless of what reasoning recommends this view, [its] acceptance of [plaintiff's argument] is precluded by well aged Fifth Circuit authority to the contrary." 672 F.2d at 1378.[3]

Unlike the Eleventh Circuit, this court need not suspend the reasoning of Professors Moore and Lucas, because this court is not constrained by directly applicable precedent. Moreover, the court finds Second Circuit precedent to be more supportive of the view expressed by Professors Moore and Lucas than it is of the holding of *Timmons.* As already noted, the two rulings of the Second Circuit on this subject support the principle that a court has ancillary jurisdiction to hear a claim for relief from a previous judgment, despite the intervening destruction of the jurisdiction upon which the former suit was based. *Cresswell,* 922 F.2d at 70; *Martina Theatre,* 278 F.2d 798, 800 n. 1. If the doctrine of ancillary jurisdiction is "sufficiently flexible" to allow jurisdiction to review a previous holding based on diversity or a federal question where neither of these bases for jurisdiction currently exists, it should also suffice to allow the court to review an earlier decision in a case where the government waived sovereign immunity, despite the government's assertion that it no longer wishes to waive that important protection.

This court's reasoning hinges on the Supreme Court's recognition in *Pacific R.R. of Missouri* that, for purposes of establishing

---

3. Congress created the United States Court of Appeals for the Eleventh Circuit in 1981 by dividing the Fifth Circuit into the Fifth and Eleventh Circuits. *See* Act of Oct. 14, 1980, Pub.L. No. 96–452, § 2, 94 Stat. 1994 (codified at 28 U.S.C. § 41 (1982)). In one of its first actions, the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit that existed as of September 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting Fifth Circuit cases as binding precedent).

jurisdiction, an independent action in equity is a continuation of the former suit. *Pacific R.R. of Missouri,* 111 U.S. at 522, 4 S.Ct. at 592. Seen in such a light, the exercise of jurisdiction in this case does not offend traditional notions of sovereign immunity. Because the United States freely waived its immunity to suit in *Weldon I,* it has waived it immunity regarding an equitable challenge to the validity of the disposition of that case, and the court therefore has jurisdiction to proceed to the merits of this action.[4]

## B. *Defendant's Motion for Summary Judgment*

Because both defendant and plaintiff have submitted numerous exhibits, which the court deems necessary to consider in deciding defendant's alternative motions, the court will treat the motions jointly as a single summary judgment motion. *See* Fed. R.Civ.P. 12(b). In so doing, the court holds that the relief sought by plaintiff in this equity action is barred because plaintiff had a full and fair opportunity to litigate her present claims during *Weldon I.* Moreover, traditional principles of equity do not support plaintiff's claim. For these reasons, the court grants defendant's motion for summary judgment.

### 1. *Summary Judgment Standards*

The principles governing motions for summary judgment are premised on Federal Rule of Civil Procedure 56, and do not require extended discussion here. Under Rule 56, the court shall grant summary judgment when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue of material fact, and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56.

■ In a triad of cases decided in 1986 the Supreme Court explicated the relative burdens on the parties when a summary judg-

ment motion is raised. *See Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party seeking summary judgment bears the initial burden of informing the court of the basis of its motion and demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. If the moving party meets this burden, the burden shifts to the non-movant, which must demonstrate that there is a genuine issue of material fact in order to survive the motion. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. An issue is genuine if it raises more than "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the nonmoving party's case such that a jury could return a verdict in its favor." *Greenblatt v. Prescription Plan Services Corp.,* 783 F.Supp. 814, 819–20 (S.D.N.Y.1992) (citing *Anderson,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

With these standards in mind, the court considers the arguments raised in defendant's motion for summary judgment.

### 2. *Plaintiff's previous opportunities to examine claims*

In order to independently examine each of plaintiff's charges the court first will synopsize her repetitious allegations of misrepresentation. Her complaint alleges three statements, repeatedly made by defense counsel at oral argument and in papers submitted both to this court and the Second Circuit, that she alleges are false and misleading:

---

4. Defendant also argues that the court lacks jurisdiction because plaintiff failed to exhaust her administrative remedies as required by 28 U.S.C. § 2673(a), and because pursuant to 28 U.S.C. § 2680(h) waiver of sovereign immunity under the FTCA does not extend to claims arising out of

misrepresentation and deceit. These arguments fail to address the ancillary nature of the court's jurisdiction. Because neither argument affects the court's jurisdiction in *Weldon I,* neither acts to destroy the court's ancillary jurisdiction over the present dispute.

1) *Diagnosis:* That plaintiff's expert, Dr. Joseph Bellanti, agreed with defendant that plaintiff did not suffer from GBS, and that affidavits from all of the treating physicians were submitted to the court on the issue of diagnosis.[5]

2) *Treating Physicians:* That the physicians who treated plaintiff for her illness in 1979 had changed their opinions regarding the diagnosis that appeared in plaintiff's hospital records and now agreed with the government that plaintiff did not suffer from GBS.[6]

3) *Causation:* That plaintiff's expert considered it "equally possible" that plaintiff's 1979 illness was a reaction to an influenza infection she suffered prior to being vaccinated with the swine flu vaccine in 1976,[7] and that plaintiff's expert conceded that the textbook he authored on immunology did not support his primary theory that plaintiff's illness was caused by the swine flu vaccine.[8]

Affidavit of Peter Hartnett, Attached to Doc. 3, at 3. After a thorough review of the voluminous record, including the parties' memoranda and transcripts of oral arguments in *Weldon I,* the court concludes that each of the statements cited by plaintiff either was raised or should have been raised by plaintiff during the pendency of the earlier case.

■ Specifically, the court finds that plaintiff fully addressed most of her allegations of misrepresentation in her Petition for Rehearing before the Second Circuit. Petition for Rehearing, Defendant's ("Def.") Exhibit ("Exh.") C–22. At page 3 of the Petition plaintiff claimed that the "district court was apparently misled by the governments [sic] assertions that 1.) 'All of the treating physicians agree with the government' that the petitioner did *not* suffer from GBS, 2.) 'All of the neurologists that she went [sic] after this agree with the Government.' and 3.) 'Even Dr. Bellanti, her only expert agrees with the Government on this point.'" Petition for Rehearing, Def.Exh. C–22, at 3 (emphasis in

original). Plaintiff then proceeded to address each of defendant's assertions in considerable detail, disputing each in turn. *Id.* at 3–8. Addressing defendant's characterization of Dr. Bellanti's position, plaintiff argued that defendant's "incredible claim ... defies explanation," *id.* at 7, and amounted to a "misrepresentation of the record." *Id.* at 8.

Plaintiff's Petition for Rehearing also addressed Dr. Bellanti's alleged admission that it was equally as likely that plaintiff's illness was a reaction to influenza as it was that her illness was a reaction to the swine flu vaccine. Plaintiff asserted in her Petition that "reargument would allow an opportunity to correct several impressions that might have been created by the Government's interpretation of the record." *Id.* at 14.

Further, plaintiff could have fully addressed her claim regarding the remaining statement by defense counsel, that Dr. Bellanti's textbook does not support his prior conclusion that plaintiff suffered from GBS. This statement was made in defendant's Memorandum in Support of Summary Judgment in *Weldon I,* Def.Exh. C–4, at 19, and in defendant's Brief to the Second Circuit, Def.Exh. C–20, at 38. Plaintiff had a full and fair opportunity to respond to these assertions both at the trial and appellate court levels, and simply failed to do so. Given that each of plaintiff's allegations of misrepresentation by the government was or could have been raised in the underlying suit, the court concludes that plaintiff had a full and fair opportunity to litigate the claims of fraud she raises in the case at bar.

■ Turning to plaintiff's charges of misconduct, plaintiff alleges that defense counsel's ex parte contact with plaintiff's treating physicians during the pendency of *Weldon I* constituted misconduct under Federal Rule of Civil Procedure 60(b). Although plaintiff signed authorizations for the release of medical records, she asserts that she never consented to, nor was she informed of, informal

---

5. Complaint, Document ("Doc.") 1, at ¶¶ 14–15, 18–22, 24, 34–36, 40–43.

6. Complaint, Doc. 1, at ¶¶ 14, 23, 24–25, 27–28, 30–32, 37, 39.

7. Complaint, Doc. 1, at ¶¶ 17, 45–47.

8. Complaint, Doc. 1, at ¶¶ 29, 48.

interviews of her doctors by attorneys for the Government. That the interviews took place is evidenced by the affidavits of seven doctors submitted to the court eighteen days prior to the hearing on the defendant's motion for summary judgment in *Weldon I*. *See* Affidavits, Def.Exhs. A–45 through A–50, Def.Exh. A–53.

Assuming for the sake of argument that plaintiff's position—that defense counsel engaged in misconduct—is worthy, the court finds that she had a full and fair opportunity to raise this argument at any of the numerous junctures at which she addressed the affidavits that she bases her argument upon. In plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment in *Weldon I*, she makes no mention of the affidavits. *See* Def.Exh. C–6. At oral argument on the same motion, plaintiff's counsel addressed the affidavits, but argued only that he had not had the opportunity to depose the affiants, and that the affidavits were not credible. *See* Transcript of Proceedings on October 6, 1989 ("Transcript"), Def.Exh. C–9, at 26.

Further, in her Memorandum in Support of her Motion to Reopen Judgment, plaintiff argued that the court erred in failing to provide her with relief from defendant's excessive papers in support of its motion for summary judgment. Plaintiff's Memorandum in Support of Motion to Reopen, Def. Exh. C–12, at 1; *see also* Transcript, Def. Exh. C–9, at 20–21 (indicating the extent of defendant's voluminous submissions in support of its motion for summary judgment in *Weldon I* ). However, plaintiff then argued that the affidavits submitted by defendant were irrelevant, because none of the doctors who submitted affidavits changing their diagnosis participated in the original diagnosis of plaintiff's illness. Def.Exh. C–12, at 1.

This argument is inconsistent with plaintiff's contention that she was somehow harmed by the court's consideration of the affidavits. More importantly, the argument shows that by the time plaintiff argued her motion to reopen judgment she had reviewed the affidavits fully enough to analyze their contents. She was therefore on notice that the affidavits were solicited by defendant.

Her counsel admitted as much in a letter to the court dated December 6, 1988, ten months before the court heard argument on defendant's motion to dismiss. In that letter counsel for plaintiff indicated that the "government has interviewed many of the treating' physicians." Def.Exh. C–31, at 1.

Plaintiff argues in the current action that defense counsel's ex parte contact with plaintiff's physicians was impermissible under New York law. Because the court is convinced by the facts just stated that plaintiff was aware of the factual basis for her present argument during the pendency of *Weldon I*, the court finds that plaintiff had a full and fair opportunity to raise her present argument during that case.

Upon consideration of the exhibits before it, the court concludes that in the present suit plaintiff seeks to relitigate issues that either were squarely placed before this court and the Second Circuit Court of Appeals, or should have been so placed. Not only did plaintiff have a full and fair opportunity to litigate her present claims in *Weldon I*, she exercised her opportunity with regard to most of the claims presently before the court. The Second Circuit considered many of plaintiff's present arguments and rejected all that were placed before it. For the reasons set forth below this court will not allow plaintiff to relitigate the same arguments in this independent suit, whether raised in the context of a motion for fraud, fraud upon the court, or misconduct under Rule 60(b).

3. *Plaintiff's allegation of fraud under Rule 60(b)*

First, it is well settled that a party seeking relief in an independent action for fraud under Rule 60(b) must establish that she had "no opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action." *Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir.1988); *accord Leber–Krebs, Inc. v. Capitol Records*, 779 F.2d 895, 899 (2d Cir.1985); *M.W. Zack Metal Co. v. International Navigation Corp. of Monrovia*, 675 F.2d 525, 529 (2d Cir.), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 604 (1982); *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 n. 2 (2d

Cir.1972); *Black v. Niagara Mohawk Power Corp.*, 641 F.Supp. 799, 802 (N.D.N.Y.1986). Such an action can not stand if it is merely an attempt to relitigate the case. *Fleming v. New York University*, 865 F.2d 478, 484 (2d Cir.1989); *Mastini v. American Telephone & Telegraph Co.*, 369 F.2d 378, 379 (2d Cir. 1966), *cert. denied*, 387 U.S. 933, 87 S.Ct. 2055, 18 L.Ed.2d 994 (1967); *Nederlandsche Handel–Maatschappij, N.V. v. Jay Emm, Inc.*, 301 F.2d 114, 115 (2d Cir.1962). Because the court finds that plaintiff in the instant case had ample opportunity in *Weldon I* to both discover and address the alleged fraud, the court grants defendant's motion for summary judgment with regard to plaintiff's charges of fraud.

4. *Plaintiff's allegations of fraud upon the court and misconduct under Rule 60(b)*

█ While none of the cases cited above directly address charges of fraud upon the court or misconduct, in this case plaintiff's allegations are nonetheless barred by principles of res judicata.[9]

█ Because jurisdiction in *Weldon I* was premised on the existence of a federal question, and because, as addressed above, jurisdiction in the instant case is ancillary to the court's jurisdiction in *Weldon I*, federal law applies to determine the res judicata effect of *Weldon I* on this action. *McDowell v. Security Chimneys Ltd.*, No. 93–1121, 1993 WL 498208, at *4, 1993 U.S.Dist. LEXIS 17094, at *9 (N.D.N.Y. Nov. 27, 1993) (McCurn, S.J.). Under federal preclusion law judgment on the merits in one suit bars the

parties from relitigating the suit, " 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Nevada v. United States*, 463 U.S. 110, 130, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983) (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). The final judgment "puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *Nevada v. United States*, 463 U.S. at 130, 103 S.Ct. at 2918 (internal quotations and citation omitted).

█ When properly applied, the equitable principles justifying an independent action to set aside judgment do not conflict with the doctrine of res judicata, "for the independent action does not seek to impeach what has been competently adjudicated, but offers matter ... to show why it is inequitable to allow enforcement of the judgment." 1B MOORE'S FEDERAL PRACTICE ¶ 0.407, at III–103. Thus the general principle of res judicata applies to an independent action for relief from a prior judgment just as it does to any other action.[10] *American Surety Co. v. Baldwin*, 287 U.S. 156, 166–67, 53 S.Ct. 98, 101–02, 77 L.Ed. 231 (1932) (principles of res judicata apply to action in federal court seeking to enjoin enforcement of state court judgment); *Browning v. Navarro*, 887 F.2d 553, 562 (5th Cir.1989) (claim of fraud that could have been litigated in prior action barred by res judicata); *see also*

9. As an affirmative defense under Fed.R.Civ.P. 8(c), res judicata ordinarily must be raised in the pleadings or else it is waived. However, this defense may properly be invoked in a motion, whether for summary judgment or failure to state a claim, if the motion is presented before the answer is filed. In this case the court finds that defendant timely raised the defense, albeit inartfully. While res judicata is not listed as a defense in the answer, Doc. 12, defendant raised the substance of a res judicata defense in its Notice of Motion to Dismiss or in Alternative for Summary Judgment, Doc. 8, at ¶ 9. In arguing that "plaintiff had full opportunity to litigate all the issues" of this case in *Weldon I, id.*, defendant effectively asserted an affirmative defense of res judicata.

10. Application of res judicata principles is not precluded by the holding of the Supreme Court in *Pacific R.R. of Missouri*, for although the court wrote that an independent action in equity was a "continuation of the former suit," it immediately and expressly limited that holding to the "question of jurisdiction." 111 U.S. at 522, 4 S.Ct. at 592. If the court were to find that res judicata did not apply to an independent action in equity, it would be ignoring the very heart of that doctrine, because "restraining litigious plaintiffs from taking more than 'one bite of the apple' has been our avowed purpose since the common law doctrine of res judicata first evolved." *Sure–Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 870 (2d Cir.1991).

82

1B MOORE'S FEDERAL PRACTICE ¶ 0.407, at III–105. Because in this case plaintiff had a full and fair opportunity to discover and address the alleged misconduct of defendant and its fraud upon the court in *Weldon I*, she is forever barred from addressing that allegation in an independent action.

Even if plaintiff had not raised many of her present arguments before the Second Circuit, the court would nonetheless find them barred by res judicata. If plaintiff believed defense counsel's representations in *Weldon I* to be fraudulent, she should have addressed the issue during the pendency of the motion for summary judgment, during the appeal, or in her application for certiorari to the Supreme Court. That she had sufficient information to do so is obvious from her complaint. Plaintiff contends that defendant made misrepresentations in open court, where she was present, and in written argument, to which she responded. The law does not allow her to forego an argument in the underlying suit only to raise it in a separate action once she has lost on the merits of the underlying suit and has exhausted appellate review of the judgment in that suit.

As noted by the Supreme Court, "the doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and private peace.'" *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917)). The doctrine "serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case," *Moitie*, 452 U.S. at 401, 101 S.Ct. at 2429, and thus there is "no principle of law or equity which sanctions the rejection by a federal court of ... res judicata." *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). In addition to ensuring the repose of the victorious party, the doctrine of res judicata "reflects the refusal of the law to tolerate needless litigation," *Angel v. Bullington*, 330 U.S. 183, 192–93, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947), thereby protecting parties "from the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 154–55, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979).

■ In light of these principles, the application of res judicata to the facts at bar is clearly warranted. Dismissing plaintiff's complaint on the basis of res judicata in this instance neither deprives the court of its power to remedy fraud committed upon it, nor denies plaintiff her day in court. Here, plaintiff has already had her day in court during *Weldon I* and the appeals therefrom. She was not prevented by defendant's alleged fraud from presenting any argument in the former suit that she now raises in the current one. Further, fraud on the court can not occur where plaintiff was afforded an opportunity for fair litigation of the dispute, because fraud on the court occurs only where the fraud seriously affects the integrity of the normal process of adjudication. *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988). Thus the application of res judicata to the facts of this case does not run counter to the interest of the court in preserving the integrity of its proceedings. The court therefore finds that as a matter of law plaintiff's claims are barred by principles of res judicata, and defendant's motion for summary judgment is granted with respect to plaintiff's charges of fraud upon the court and misconduct under Rule 60(b).

5. *Equitable principles supporting summary judgment*

■ Finally, the court notes that an independent action seeking to set aside a judgment of the court based on fraud, misconduct or fraud upon the court is addressed to the court's equity powers. *See Cresswell*, 922 F.2d at 71; *Martina Theatre Corp.*, 278 F.2d at 801. Decisions in such equity actions are committed to the sound discretion of the court, informed by traditional principles of equity. *Cresswell*, 922 F.2d at 71. Thus, plaintiff must demonstrate that the situation in which she finds herself is not due to her

own fault, neglect or carelessness. It is fundamental in an equity action to set aside judgment that relief may not be provided to a plaintiff who " 'has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action . . . to open, vacate, modify, or otherwise obtain relief against, the judgment.' " *Id.* (quoting *Winfield Associates, Inc. v. Stonecipher,* 429 F.2d 1087, 1090 (10th Cir. 1970)).

■ Again, as set forth above, plaintiff could have raised any and all of her present arguments in her papers and arguments to the court in *Weldon I,* in her appeal before the Second Circuit, or in her application for certiorari to the Supreme Court. She therefore had an adequate remedy in the original action. While her failure to address these issues in *Weldon I* is perhaps unfortunate, it does not justify a second opportunity for trial. She is thus precluded from proceeding in this action by traditional principles of equity as well as by res judicata and Rule 60(b). In short, defendant's motion for summary judgment dismissing plaintiff's complaint is granted in its entirety.

## C. *OTHER MOTIONS*

Because plaintiff's action can not withstand defendant's motion for summary judgment, plaintiff's cross-motion for summary judgment is denied. Her motion to suppress evidence is moot and therefore is also denied.

■ Further, plaintiff's motion to strike defendant's Answer is denied. This motion is based on the fact that defendant's Answer was signed by William Pease, an Assistant United States Attorney for the Northern District of New York who is not an attorney of record in this case. Mr. Pease signed the answer, indicating that he was doing so "for" both Mr. Einerson and Mr. Axelrad, defendant's attorneys of record. *See* Answer, Doc. 12. Plaintiff argues that because the Answer was not signed by an attorney of record as required by Federal Rule of Civil Procedure 11, the court should strike the Answer and enter judgment in favor of plaintiff.

Rule 11 provides that "[e]very pleading . . . of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated." Fed. R.Civ.P. 11. An attorney who signs a pleading certifies that he has read the pleading, and that to the best of his knowledge it is "well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." *Id.* If a pleading is not signed, Rule 11 dictates that "it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader." *Id.* If, on the other hand, the pleading is signed in violation of Rule 11, the court is required to impose upon the person who signed it, a represented party, or both, an appropriate sanction. Such a sanction may include an order to pay the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including attorney's fees. *Id.*

In this instance defendant's Answer was signed, and by signing the Answer the court deems that Pease became an attorney of record. Judge Neal P. McCurn implicitly recognized Pease as such when he ordered an Order to Show Cause and supporting papers filed by plaintiff to be personally served upon the United States Attorney for the Northern District of New York. *See* Order, Doc. 3.

Even if Pease is not considered an attorney of record, his notation that he was signing "for" Einerson and Axelrad indicates that he did so at their instruction. The signature requirement of Rule 11 is therefore met, as Pease's signature attests to Einerson's and Axelrad's certification that the Answer is well grounded in fact and warranted by law.

Finally, even if the court were to deem the signature invalid, no sanction is appropriate for such an error. There is no indication that the Answer was filed in bad faith or for improper motive. Moreover, there is no indication that the Answer is frivolous or without foundation in law. Therefore no harm resulted from Mr. Pease signing the Answer on behalf of other trial counsel, and sanctions are inappropriate. Plaintiff's motion to strike the Answer is denied.

## CONCLUSION

In sum, defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) is granted for the aforementioned reasons. All other motions presently before the court are denied. The Clerk of the Court is directed to enter judgment in favor of defendant dismissing this action in its entirety.

It is So Ordered.