**Irene WELDON, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 924, Docket 94–6084.

United States Court of Appeals,
Second Circuit.

Argued March 10, 1995.

Decided Nov. 3, 1995.

Peter M. Hartnett, Syracuse, NY (Hartnett Law Office, Syracuse, NY), for Plaintiff–Appellant Irene Weldon.

Alfred R. Mollin, Attorney, Civil Division, Department of Justice, Washington, DC (Christopher F. Droney, U.S. Atty. for the District of Connecticut; William Kanter, Attorney, Civil Division, Department of Justice, Washington, DC; Frank W. Hunger, Assistant Attorney General for the State of NY), for Defendant–Appellee.

Before: MAHONEY, WALKER, and CABRANES, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff-appellant Irene Weldon, who became ill after receiving a swine flu vaccination, brought a personal injury suit against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and the National Swine Flu Immunization Program of 1976 ("Swine Flu Act"), originally codified as 42 U.S.C. § 247b(j)–(*l*) (1976).[1] *Weldon v. United States*, 744 F.Supp. 408 (N.D.N.Y.1990) [hereinafter *"Weldon I"*], *aff'd*, 952 F.2d 394 (2d Cir. 1991), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2973, 119 L.Ed.2d 592 (1992). Concluding that Weldon was unable to prove causation, the United States District Court for the Northern District of New York (Howard G.

---

1. This statute was repealed by Pub.L. 95–626, § 202, 92 Stat. 3574 (1978), 42 U.S.C. § 247b (1978).

Munson, *District Judge* ), granted summary judgment in favor of the United States. *Id.* at 413. Nearly three years later, Weldon brought an independent equity action pursuant to Rule 60(b) seeking to vacate the summary judgment on the grounds that "the defendant United States committed fraud upon the court both at the trial and appellate levels." *Weldon v. United States*, 845 F.Supp. 72, 74 (N.D.N.Y.1994) [hereinafter *"Weldon II "*]. Judge Munson again granted summary judgment in favor of the United States. *Id.* at 84. Weldon appeals. We affirm.

## BACKGROUND

The facts leading to plaintiff's personal injury suit are set out in *Weldon I.* For purposes of this appeal, we provide only a brief summary of those facts. On November 16, 1976, Weldon received a swine flu vaccination in North Syracuse, New York, pursuant to the Swine Flu Act. Over the next two years, she was ill at various times with a sore throat, a swollen left jaw, chest pains, and colds, and she frequently experienced weakness. On February 19, 1979, Weldon was hospitalized for a high fever accompanied by "shakes, body aches, loss of appetite, stiff neck, lethargy and sleeping all the time." *Weldon I,* 744 F.Supp. at 409. For a period during her hospitalization, she was placed in the intensive care unit and was also placed on a respirator and intubated for nourishment. More than two months later, she was transferred to another hospital where she remained for several days. A medical report prior to her transfer indicated that she had Viral Meningo-encephalitis ("VME"), Guillain–Barre syndrome ("GBS"), interstitial lung disease, and a urinary tract infection. *Id.*

On October 20, 1981, Weldon filed a personal injury action against the United States under the FTCA and the Swine Flu Act, in which she claimed to have contracted GBS and VME as a result of the flu shot. *Id.* at 408. For a limited period of time, the United States assumed exclusive liability, with certain limitations, for all personal injuries or deaths resulting from manufacture, distribution, or administration of vaccine under the swine flu program.[2] 42 U.S.C. § 247b(k) (1976). The government moved for summary judgment on the grounds that Weldon offered no evidence [3] that she suffered from GBS and that she did not raise a genuine issue of fact that the flu shot caused her illness. *Weldon I,* 744 F.Supp. at 410.

Finding that the government had "proffered substantial amounts of evidence that plaintiff did not suffer from GBS," the district court reasoned that, in order to prevail, Weldon was required to introduce expert medical testimony. *Id.* at 411. Although her discharge papers had indicated a diagnosis of GBS, Judge Munson observed that the doctors who had initially made that diagnosis revised their opinions based on a review of diagnostic studies. Thus, "[g]iven the fact that plaintiff has not produced one expert who opines that she suffered from GBS," the court concluded that, as a matter of law, Weldon did not suffer from GBS. *Id.*

In addition, Judge Munson concluded that Weldon had failed to raise a genuine issue of fact as to whether the swine flu shot caused her illness. Although Weldon offered the testimony of Dr. Joseph Bellanti, who testified that the flu shot did cause the illness, the district court was persuaded by the government's evidence demonstrating that Dr. Bellanti's opinion was too hypothetical to satisfy Weldon's burden in defeating the government's motion for summary judgment. The

**2.** *Weldon I* was transferred by the Judicial Panel on Multidistrict Litigation to the district court for the District of Columbia for coordinated pretrial procedures in *In re Swine Flu Immunization Products Liability Litigation*, 89 F.R.D. 695 (D.C.D.C.1980). The action was subsequently returned to the Northern District of New York, and on September 20, 1984, the United States filed an answer. During pretrial proceedings, the United States stipulated that if the plaintiff established that a swine flu vaccination caused Guil-

lain–Barre Syndrome, she did not have to establish a theory of liability (*e.g.,* negligence or failure to warn).

**3.** After "a new review of plaintiff's medical records, plaintiff's treating neurologist and interns agree[d] that the original diagnosis, that plaintiff suffered from GBS, was incorrect." *Weldon I,* 744 F.Supp. at 410.

district court placed particular reliance on the fact that Weldon failed to come forward with any scientific studies supporting the theory proposed by Dr. Bellanti. *Id.* at 411–12. With proof of causation absent, the district court granted the government's summary judgment motion on September 13, 1990. *Id.* at 413.

Thereafter, the district court denied Weldon's motion to reopen the judgment pursuant to Rules 59 and 60(b) of the Federal Rules of Civil Procedure and for further discovery pursuant to Rule 56(f). *Weldon II*, 845 F.Supp. at 74. On November 26, 1991, we affirmed the district court's judgment without opinion. *Weldon v. United States*, 952 F.2d 394 (2d Cir.1991) (table). After her petitions for rehearing and for a writ of certiorari were denied, *see* 504 U.S. 988, 112 S.Ct. 2973, 119 L.Ed.2d 592 (1992), Weldon filed a new complaint, the dismissal of which is the basis of this appeal. *Weldon II*, 845 F.Supp. at 84.

In her *Weldon II* complaint, Weldon charged that during the litigation of *Weldon I*, the United States committed "fraud, misrepresentation, and other misconduct" and "fraud upon the court," for which she was entitled to equitable relief. *Id.* at 75. She asserted, among other things, that the United States "repeatedly and fraudulently misrepresented the record concerning the viewpoints of several potential witnesses in *Weldon I* ... [and] that defendant's attorney improperly interviewed plaintiff's treating physicians during the pendency of *Weldon I*." *Id.* Specifically, pursuant to Federal Rule of Civil Procedure 60(b), Weldon requested vacatur of the summary judgment; that the original case be scheduled for trial; and that she be awarded costs, disbursements, and attorneys' fees. *Id.* Both parties cross-moved for summary judgment.

The district court first rejected the government's assertion that the court had no jurisdiction to consider the claim because the United States had not waived its sovereign immunity from claims seeking equitable relief. *Id.* at 75–78. It then granted summary judgment in favor of the United States on two grounds. First, the district court found that Weldon had "a full and fair opportunity to litigate her present claims in *Weldon I*," during the pendency of which she either raised or should have raised her allegations of misrepresentations and misconduct. *Id.* at 78–80. Therefore, Weldon's claims of fraud upon the court and misconduct were barred by principles of res judicata. *Id.* at 81–82. Second, the court concluded that, because Weldon had not shown that "the situation in which she finds herself is not due to her own fault, neglect or carelessness," she was precluded by "traditional principles of equity" from proceeding in the action. *Id.* at 82–83.

## DISCUSSION

Weldon asserts on appeal that 1) the district court erred in finding that her action for fraud on the court was barred by res judicata or "equitable principles"; 2) the government's misrepresentations and misconduct constituted fraud upon the court; and 3) she is entitled to a default judgment in her favor and to attorneys' fees. In addition to opposing these claims, the government argues that the district court lacked jurisdiction on sovereign immunity grounds and that Weldon's Rule 60(b) motion was untimely.

We affirm for substantially the reasons set forth in Judge Munson's thoughtful opinion, *Weldon II*, 845 F.Supp. 72, and write principally to address the question of jurisdiction.

### I. Jurisdiction

The district court concluded that it had ancillary jurisdiction over *Weldon II* on the basis that the independent action was a continuation of the former suit. *Id.* at 77–78 (citing *Pacific R.R. v. Missouri Pac. Ry.*, 111 U.S. 505, 522, 4 S.Ct. 583, 592–93, 28 L.Ed. 498 (1884)). Thus, the district court concluded that it had jurisdiction even in the absence of the United States' explicit waiver of sovereign immunity from actions alleging fraud on the court.

The government contends that, since the FTCA provides remedies for money damages, *see* 28 U.S.C. § 1346(b), and makes no reference to equitable relief, the FTCA's limited waiver of sovereign immunity does not extend to suits in equity. Without an explicit waiver of its sovereign immunity, the government argues, it may not be sued.

Whether sovereign immunity precludes an independent action against the United States for fraud upon the court is a question of first impression for us. *United States v. Timmons*, 672 F.2d 1373 (11th Cir.1982), is one of the few cases to address this question. In *Timmons*, the United States first brought an ejectment action against the defendants, who maintained that a separate trial was necessary to address their defense that the United States had improperly acquired the property from the defendants' ancestors. The Eleventh Circuit recognized that a court may "entertain an independent action in equity for relief from judgment on the basis of its independent and substantive equitable jurisdiction." *Id.* at 1378. However, construing the defense as a counterclaim, the court concluded that the district court had no jurisdiction over the counterclaim because the United States had not waived its immunity as to such a claim. *Id.* at 1378–80.

To the extent that *Timmons* may be applicable to the case at bar, we choose not to follow it. While we recognize that the United States is immune from suits unless it consents to be sued and that such consent must be interpreted strictly, *United States v. Sherwood*, 312 U.S. 584, 586, 590, 61 S.Ct. 767, 769, 771, 85 L.Ed. 1058 (1941), we believe that the district court had jurisdiction in this case. Under elementary principles of fairness and justice, actions seeking relief from judgments based on alleged fraud upon the court should be treated as continuations of the former action. *See* 7 James W. Moore, Moore's Federal Practice ¶ 60.38[1], at 60–399 (2d ed. 1995). It would be odd indeed to hold that, after consenting to suit under the FTCA, the government is then free to perpetrate a fraud on the court without consequence simply because the government did not explicitly waive its immunity from an action against it based upon such fraud. In consenting to suit under the FTCA, the government must have intended to be bound by general rules of fair play and codes of conduct in litigating federal tort claims. Thus, we conclude that the FTCA also permits equitable relief in an independent action based on assertions of fraud on the court that are committed in the course of a suit against the government for money damages.

■ Moreover, even if we did not construe the FTCA as implicitly authorizing consent to a suit in equity in such circumstances, authorization is not necessary in the context of this particular case. We agree with Judge Munson that an action seeking relief from judgment for fraud upon the court, which is brought in the very court that rendered the judgment in favor of the government, should be viewed as "a continuation of the former suit, on the question of ... jurisdiction," *see Pacific R.R. v. Missouri Pac. Ry.*, 111 U.S. 505, 522, 4 S.Ct. 583, 592, 28 L.Ed. 498 (1884), regardless of whether the government gave its consent. *Weldon II*, 845 F.Supp. at 77–78; *see* Moore, *supra*, ¶ 60.38[1], at 60–398 to 399.

In *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir.1990), we observed that Rule 60(b) " 'does not limit the power of a court to entertain an independent action to relieve a party from a judgment [or] order.' " *Id.* at 70 (quoting Fed.R.Civ.P. 60(b)). Although *Cresswell* did not involve a government claim of sovereign immunity as a jurisdictional bar, we stated the general principle that even when the federal basis for jurisdiction no longer exists, "the district court that entered the original judgment has inherent 'ancillary' equitable jurisdiction to entertain the suit for relief from the judgment." *Id.; see also Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d 798, 800 n. 1 (2d Cir. 1960) (if action to set aside judgment "is brought in the federal court that rendered the initial judgment, there is ancillary jurisdiction over the action despite absence of a federal question or diversity of citizenship"). As Judge Munson correctly reasoned:

If the doctrine of ancillary jurisdiction is "sufficiently flexible" to allow jurisdiction to review a previous holding based on diversity or a federal question where neither of these bases for jurisdiction currently exists, it should also suffice to allow the court to review an earlier decision in a case where the government waived sovereign immunity, despite the government's assertion that it no longer wishes to waive that important protection.

*Weldon II*, 845 F.Supp. at 77.

Because we find that the district court had jurisdiction, we need not consider the gov-

ernment's contention that, if construed as a Rule 60(b) motion, Weldon's assertion of fraud on the court should be denied as untimely. "A party is not bound by the label he puts on his papers. A motion may be treated as an independent action or vice versa as is appropriate." 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure: Civil § 2868, at 405 (2d ed. 1995). Thus, although it is labeled a Rule 60(b) motion, we need not treat Weldon's request for relief from judgment as such a motion since the court had jurisdiction to consider it an independent action in equity.

## II. Res Judicata

Having found jurisdiction, the district court granted summary judgment in favor of the government because all of the claims of misrepresentation or misconduct either had been or could have been raised by Weldon in the original case. *Weldon II*, 845 F.Supp. at 79. We review the district court's decision de novo, *see Taggart v. Time, Inc.*, 924 F.2d 43, 45–46 (2d Cir.1991), and affirm.

■ "The doctrine of res judicata does not apply to *direct* attacks on judgments. Res judicata does not preclude a litigant from making a direct attack [under Rule 60(b) ] upon the judgment before the court which rendered it." *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir.1985) (quotation marks omitted). Weldon's attack in this case, however, is not direct: the very grounds on which she claims fraud upon the court—the government's alleged misrepresentation and misconduct—were "raised or should have been raised by [Weldon] during the pendency of the earlier case," *Weldon II*, 845 F.Supp. at 79, whether prior to judgment or afterwards, by way of a motion for reconsideration or petition for rehearing, *see id.* at 78–82 (citing in detail instances in which Weldon might have raised or did raise such claims). Thus, res judicata barred this independent action to void the judgment. *See American Surety Co. v. Baldwin*, 287 U.S. 156, 166–67, 53 S.Ct. 98, 101–02, 77 L.Ed. 231 (1932) (applying res judicata to action seeking to set aside judgment for lack of jurisdiction); *Browning v. Navarro*, 887 F.2d 553, 558–59 (5th Cir.1989) (res judicata applies to actions to void judgment for fraud).

In considering a plaintiff's claim of "fraud on the court" in *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir.1988), we found that a plaintiff who had an opportunity in prior proceedings to challenge a police officer's account of his arrest was not free to challenge the original proceeding by way of an independent action. *See also Leber–Krebs, Inc. v. Capitol Records*, 779 F.2d 895, 899 (2d Cir.1985). Here too, Weldon may not relitigate in *Weldon II* the claims of misrepresentation that she could have litigated, and to a great extent did litigate, in *Weldon I*. Only if Weldon had had no opportunity to litigate the allegations of fraud on the court could this action go forward. *See Leber–Krebs, Inc.*, 779 F.2d at 899. But since that is not the case, we affirm the district court's grant of summary judgment to the government.

We note briefly our skepticism over the district court's conclusion that denial of relief from judgment was justified because Weldon could not "demonstrate that the situation in which she [found] herself is not due to her own fault, neglect or carelessness." *Weldon II*, 845 F.Supp. at 82–83. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944) (article by defendant's attorney, printed in trade journal under false name of purported, disinterested expert, was fraud upon the court and fact that fraud claimant might not have exercised proper diligence to discover the fraud was immaterial). However, we do not reach this issue since the district court had a sound independent basis for its grant of summary judgment.

Because we find that Weldon's action is barred by res judicata, we do not need to consider either the merits of her claims or her request for attorneys' fees.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.